Public Utilities Commission,
No. 4708.

PUBLIC SERVICE COMPANY & a. v. STATE.

Argued March 3, 1959.

Decided April 21, 1959.

*Sulloway, Hollis, Godfrey & Soden* (*Mr. Hollis* orally), for the plaintiffs.

*Atlee F. Zellers* (by brief and orally), for the New Hampshire Electric Cooperative, Inc. and White Mountain Power Company.

*Louis C. Wyman*, Attorney General, *Warren E. Waters*, Deputy Attorney General, and *John N. Nassikas*, Special Counsel (*Mr. Waters*, and *Mr. Nassikas* orally), for the State.

WHEELER, J. On June 10, 1958, the Public Service Company of New Hampshire and New Hampshire Gas and Electric Company filed new tariffs with the Commission providing for increased revenues to become effective July 11, 1958. On June 11, 1958, the Attorney General filed a motion on behalf of the State requesting the Commission to suspend the tariffs for investigation, which motion was granted on June 16, 1958.

On August 15, 1958, the company petitioned the Commission for an order prescribing as temporary rates for the duration of the proceedings the rates contained in the suspended tariffs. The State, on August 20, 1958, moved that the company's petition for temporary rates be denied. After hearing, the Commission (one member dissenting) on September 30, 1958, issued its report and order prescribing the current rates as temporary rates effective October 1, 1958, pending a decision establishing permanent rates. It is from this order that the State appeals.

The State contends that the ultimate issue to be decided by this appeal is whether the majority of the Commission erred in prescribing the currently effective rates as temporary rates pending a determination of permanent rates. Interwoven in this basic issue are the contentions that the statutory authority given by RSA 378:27 to prescribe temporary rates could not be exercised upon the facts before the Commission; that there was no evidence to sustain a finding that the establishment of current rates as temporary rates was required by the public interest; and that there was no evidence to justify use in these proceedings of a 5.65 per cent rate as a reasonable rate of return in determining the necessity for a temporary rate order, said rate having been determined in a prior rate case, as to rates filed in 1952. *Chicopee Mfg. Co.* v. *Company*, 98 N. H. 5.

The pertinent statute (RSA 378:27) provides: "In any proceeding involving the rates of a public utility brought either upon motion of the commission or upon complaint, the commission may, after reasonable notice and hearing, if it be of the opinion that the public interest so requires, immediately fix, determine, and prescribe for the duration of said proceeding, reasonable temporary rates; provided, however, that such temporary rates shall be sufficient to yield not less than a reasonable return on the cost of the property of the utility used and useful in the public service less accrued depreciation, as shown by the reports of the utility filed with the commission, unless there appears to be reasonable ground for questioning the figures in such reports."

The State contends that the Commission was without statutory authority to enter an order for temporary rates in these proceedings because they were not brought "upon motion of the commission or upon complaint," as required by section 27, *supra;* and because the legislative history of sections 27 and 29 indicate that the statute was designed for use in proceedings initiated to effect a reduction in rates, rather than in those where higher rates were likely to result. These contentions we are unable to adopt.

The occasion for an order for temporary rates pending a determination of permanent rates arises only when there is objection to the existing or proposed rates of a utility. The Commission is authorized to investigate any proposed increase in rates, and pending such investigation to suspend any proposed new rates. RSA 378:5, 6. This it may do either upon its own motion, or upon complaint. RSA 365:1, 4, 5. The proceeding in such a case by its very nature does not originate with the utility itself, nor did it do so in this case. The rates proposed by the company's new tariff were suspended for investigation by order entered either upon motion of the Commission itself, or in response to the motion of the State. We see no reason to question the fact that the manner in which these proceedings originated answered the description of a proceeding in which temporary rate orders are authorized by RSA 378:27.

It is reasonable to assume from matters pointed out by the State, that when sections 27 and 29 were enacted in 1941 (Laws 1941, c. 148) the purpose entertained by the Legislature was to permit a temporary order effecting a reduction in rates, and at the same time foreclose the utility from raising a constitutional issue of confiscation by guaranteeing it a minimum below which such

temporary rates should not go (*s.* 27), and a right of recoupment should the temporary rates ultimately be found too low (*s.* 29). As the State points out, the immediate problem in 1941, was the reduction of rates, rather than their increase. See *Bronx Gas and Electric Co.* v. *Maltbie,* 271 N. Y. 364, 371, 372; Re Concord Electric Company, XXII N. H. P. S. C. 53, 54, 55.

By 1951, however, the course of rate making had changed, and trends were toward higher rates. Hence to protect the public against loss by reason of temporary rates which might ultimately prove excessive, the Legislature enacted the provision of section 30, requiring the utility to furnish a bond for repayment of rates collected under "temporary rates . . . prescribed under section 27 which are higher than those previously in effect." Laws 1951, c. 203, *s.* 46, *par.* 30.

In the light of the latter statutory provisions, there could be no question concerning the authority of the Commission after August, 1951, to order temporary rates higher than those previously in effect. Hence the State's contention that the order in this case was unauthorized because not entered in proceedings instituted with a view to reducing rates cannot be accepted.

It is further contended by the State that there was insufficient evidence upon which to establish the current existing rates as the temporary rates. In support of this contention the State argues it was error for the Commission, in determining the need for temporary rates, to base its decision on the previously established 5.65% rate of return in the absence of evidence that such rate was reasonable. In other words, it is the position of the State that in establishing temporary rates the Commission must adopt the same standards as are applied in permanent rate cases. We are unable to adopt this contention.

The Commission found on the evidence before it that the company was not earning a 5.65% rate of return, taking into consideration that it barely earned that return in 1957 when the company "paid no franchise tax, and had a lower rate base, lower wages, taxes, and other costs," and that "in 1958 the Companies have had substantial wage increases, a new State franchise tax . . . together with . . . other increased costs."

Nowhere in its arguments before the Commission or this court has the State claimed that the current rates were "unjust and unreasonable" but on the contrary it has taken the position that they were yielding an adequate return "for the immediate fore-

seeable future" and "substantially equated to 5.65%." It further contends that there was no evidence to warrant a finding that the company was not earning a reasonable return under the current rates, or that 5.65% was a reasonable rate of return.

For purposes of testing the validity of the current rates the yardstick of a 5.65% return which these rates were originally designed to produce was properly entitled to consideration. Because of the delay inherent in the establishment of permanent rates, the statute (RSA 378:27) provides that what is a reasonable temporary rate of return shall be determined expeditiously if not summarily with reference to the utility reports filed with the Commission; and "unless there appears to be reasonable ground for questioning [such] figures . . . " (RSA 378:27) we are entitled to assume that what is a reasonable rate was determined from this source, in the absence of evidence to the contrary. RSA 541:13; *New England Tel. Co.* v. *State*, 95 N. H. 515, 518.

The real issue is what the public interest requires (RSA 378:27). If the Commission could properly find that there was some danger that current rates might not produce the non-confiscatory minimum provided for by section 27 then it could properly establish current rates as temporary rates, even though the only effect of this would be to guarantee that the company would eventually receive the "just and reasonable" rates which would ultimately be fixed as permanent rates. It has not been demonstrated that the findings of the Commission were unwarranted by the evidence. The statute provides that its findings "shall be deemed to be *prima facie* reasonable and lawful" and that its order shall not be set aside unless this court is satisfied by the preponderance of the evidence before it that the order is "unjust or unreasonable." RSA 541:13. On the basis of the evidence before us we cannot say that the order of the Commission was "unjust or unreasonable."

The contentions of the New Hampshire Electric Cooperative and White Mountain Power Co. have not been considered in this opinion since the rates governing energy furnished to these two companies were not changed by the temporary rate order. This action will not preclude consideration of their contentions in the permanent rate case.

*Appeal dismissed.*

All concurred.