Public Utilities Commission,
No. 4962.

STATE *v*. NEW ENGLAND TELEPHONE & TELEGRAPH CO.

Argued August 10, 1961.

Decided September 14, 1961.

*Gardner C. Turner*, Attorney General and *Frederic T. Greenhalge*, Assistant Attorney General (*Mr. Greenhalge* orally), for the State.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Graf* orally), for New England Telephone & Telegraph Company.

*John N. Nassikas*, special counsel (by brief and orally), for the Public Utilities Commission.

*Perkins & Dowst* for the International Brotherhood of Telephone Workers, Local 20, furnished no brief.

PER CURIAM. The statutory provisions appearing in RSA 378:27, 29 and 30 are products of the last two decades designed to protect the utility or the ratepayer, as the case may be, against losses by reason of temporary rates when permanent rates prove to be higher or lower than temporary rates. Sections 27 and 29, enacted in 1941, were designed to protect utilities against confiscatory rates and to permit recoupment of any deficiency in return suffered under a temporary order. *Public Service Co.* v. *State*, 102 N. H. 66, 68.

Section 30 was enacted in 1951 upon the recommendation of an interim legislative commission established in 1949, in an effort to afford comparable protection to ratepayers, should temporary rates prove to have been too high when permanent rates are established. In the words of the interim commission, section 30 was proposed "to provide for a filing of a bond . . . to guarantee a return to the rate payer of the difference between the amount earned by the temporary rate and the permanent rate if the permanent rate [when established] is less than the temporary rate . . . . " Report of the Interim Legislative Commission to Study Laws Regulating Public Utilities (1951) 53. The Legislature not only adopted the interim commission's proposal but also amended section 6 of the chapter to provide for a like bond to be filed when a utility places in effect a schedule of higher rates following a suspension of the effective date thereof pending investigation by the Commission. See RSA 378:6. *New England Tel. & Tel. Co.* v. *State*, 97 N. H. 555, 556.

Sections 29 and 30 have since been regarded as particularizations of the comprehensive rate-making powers conferred upon the Com-

mission in its early years (Laws 1911, c. 164, s. 11a; RSA 378:7) rather than as latter-day limitations upon those powers. The authority of the Commission to establish current rates as temporary rates has been considered well within its discretion to "determine the just and reasonable or lawful rates . . . to be thereafter observed" (RSA 378:7), and "if it be of the opinion that the public interest so requires [to] immediately fix . . . reasonable temporary rates." RSA 378:27; *Public Service Co. v. State,* 102 N. H. 66; *New Eng. Tel. Co. v. State,* 95 N. H. 515. See New England Tel. & Tel. Company, 31 N. H. P. S. C. 337, 343.

The circumstances of the case before us do not fall within the precise authorization of section 30, since the "temporary rates . . . prescribed" are not "higher than those previously in effect," but the same. Yet the evidence upon which the Commission based the second paragraph of its order, providing for a reduction of rates below the current level in the event the company should not choose to file a bond, warranted a finding that permanent rates might well prove lower than current rates. Thus it could properly find that the occasion was one in which section 30 was intended to apply, falling within the purpose stated by the interim commission namely: "to guarantee a return to the rate payer of the difference . . . . " *Cf. Chicopee Mfg. Co. v. Company,* 97 N. H. 553.

The order from which the State appeals did not require the utility to furnish the bond in question. Intrastate rates lower than those currently in effect were fixed by the second paragraph of the order; but the preceding provisions permitted the utility to retain its current rates as temporary rates pending a final order, if it chose to file a bond. This it elected to do.

"We are of the opinion that there is nothing in the statute which precludes the acceptance of such a bond when voluntarily offered and that it should be accepted if it appears to be a reasonable way of protecting the public against the payment of rates which are subsequently adjudged to be unreasonable." *New Eng. Tel. Co. v. State,* 95 N. H. 58, 61.

The conditional provision of the first paragraph of the order was no abuse of the Commission's discretion to "fix . . . reasonable temporary rates" (RSA 378:27) and to "determine the just and reasonable or lawful rates . . . to be thereafter observed." RSA 378:7. It permitted continuance of the status quo in preference to a temporary change in rates followed by further changes when final rates should be established. See *New England Tel. & Tel. Co.* v.

*State,* 97 N. H. 555, 556, *supra.* At the same time it protected the ratepayers by means of the bond. As special counsel has pointed out: "The order . . . accomplishes the same result as if rates had been reduced . . . with a right to recoupment by the Company under RSA 378:29, if permanent rates were higher."

The order of the Commission was within the purview of RSA 378:7 and 27, *supra* (*New Eng. Tel. & Tel. Co.* v. *State,* 98 N. H. 211, 219), and is not shown to be erroneous, unjust or unreasonable. RSA 541:13. The rate-making power of the Commission is to be distinguished from auxiliary powers which are more strictly limited. *State* v. *N. H. Gas & Elec. Co.,* 86 N. H. 16. While the authority of the Commission "does not extend beyond expressed enactment or its fairly implied inferences" (*Petition of Boston & Maine R. R.,* 82 N. H. 116), as was pointed out in *State* v. *N. H. Gas & Elec. Co., supra,* 30, the authority of the Commission to regulate rates "is plenary save in a few specifically excepted instances." *Lorenz* v. *Stearns,* 85 N. H. 494, 506.

*Appeal dismissed.*

All concurred.