Manchester District Court
No. 78-236

RUDOLPH S. NELSON, JR.

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

May 17, 1979

*J. Michael Love*, of Manchester, by brief and orally, for the Legislative Utility Consumers' Council, on behalf of Rudolph S. Nelson, Jr.

*Sulloway, Hollis, Godfrey & Soden*, of Concord (*Martin L. Gross* orally), for Public Service Company of New Hampshire.

*Thomas D. Rath*, attorney general, and *David William Jordan*, assistant attorney general, for the State as amicus curiae.

DOUGLAS, J.   This case requires us to decide whether a district court's small claims jurisdiction extends to a ratepayer's action against a public utility to recover an alleged utility rate overcharge. The defendant appeals from a verdict in plaintiff's favor in the amount of $21.73 in a small claims action brought in the Manchester District Court. The defendant's exceptions to the denials of its motions to dismiss and set aside the verdict were transferred by *O'Neil*, J. We affirm.

On April 27, 1977, the defendant, Public Service Company of New Hampshire, filed a new tariff with the public utilities commission designated as Tariff No. 21. The filing, pursuant to RSA 378:3, was subsequently suspended for investigation, but on November 21, 1977, the defendant notified the commission that it would exercise its authority under RSA 378:6, and, under bond, put the tariff into effect on December 3, 1977. The commission accepted the bond. The commission sent the defendant a letter which stated that because of RSA 378:6, the new rate was going into effect "without approval by the Commission" and that the "Commission has no authority under the statute cited with respect to the Company placing the rates into effect." Finally, the commission told the defendant to "give notice to its customers of its rates by an appropriate insert accompanying the monthly bills to each customer on which said rates will be applicable."

According to the commission's Tariff Filing Rule No. 29, "[u]nless *otherwise expressly provided,* newly established rates shall be *first used* in the rendering of all bills based on successive meter readings, the latter of which is taken on or after the effective date." (Emphasis added.) The plaintiff's meter had been read on November 10, 1977, some twenty-four days before the 17% rate increase went into effect. It was next read on December 13, ten days after the new rate went into effect. The plaintiff's bill, however, reflected the new rate over the entire thirty-four-day period since his meter had last been read. Plain-

tiff computed the increase at $27.47 for the entire period and prorated the charge to $21.73 for the twenty-four days he felt he had been overcharged. He successfully sought relief in small claims court to recover $21.73, asserting that the defendant had improperly collected the rate prior to the rate's legal effective date.

The defendant initially asserts that the district courts of this State have no jurisdiction to hear any case involving electric utility rates. The defendant points out that since 1911 (Laws 1911, ch. 164) and 1913 (Laws 1913, ch. 145), the commission has had comprehensive powers concerning the regulation of public utilities. The commission quite correctly has "full control over the rates to be charged" by regulated utilities. *Lorenz v. Stearns*, 85 N.H. 494, 506, 161 A. 205, 212 (1932), *cert. denied*, 287 U.S. 565 (1932). Although Laws 1917, ch. 164 vested the commission with "important judicial duties and . . . with large administrative and supervisory powers," *Parker-Young Co. v. State*, 83 N.H. 551, 556, 145 A. 786, 789 (1929), the legislature did not enact a method for the filing of individual complaints against utilities with the commission until 1951. Laws 1951, ch. 203.

In its present form, RSA 365:1 provides that "any person *may* make complaint to the commission" concerning the actions of a public utility. (Emphasis added.) In most matters, this complaint method is the logical recourse for complainants because of the commission's expertise, developed over the years in the regulation of utilities and their rates. But the commission does not have exclusive jurisdiction over all matters concerning public utilities. *See, e.g., Blevens v. New England Tel. & Tel. Co.*, 116 N.H. 247, 356 A.2d 696 (1976). The language of RSA 365:1 contains no reference to exclusive or primary jurisdiction. The legislature has established such jurisdiction of other State agencies and commissions. For example, the ballot-law commission has "jurisdiction . . . exclusive of all other remedies" to review written objections filed with the secretary of state concerning primary nominations, nominations by petition, and the filling of vacancies in nominations occurring after the primary. RSA 68:3 (Supp. 1977). RSA 273-A:6 grants the public employee labor relations board "primary jurisdiction of all violations of RSA 273-A:5 [unfair labor practices]." The language in these statutes is dissimilar to the permissive language of RSA 365:1. We note that this case does not present the issue of this court's review of an appeal from a commission order not brought within the "well-ordered and well-articulated scheme considered necessary in the review of public utility regulation" of RSA ch. 541. *See Nashua v. Public Utilities Commission*, 101 N.H. 503, 507, 148 A.2d 277, 280 (1959). The commission's only action in this case was

to accept the bond filed by the company under RSA 378:6; it did not authorize or issue an order concerning the rate.

In contrast to the permissive jurisdiction granted to the commission, the statutory grant of jurisdiction to the district courts is broad and specific. RSA 502-A:14 I (Supp. 1977) provides that "all district courts shall have *original* and *exclusive* jurisdiction of civil cases in which the damages claimed do not exceed five hundred dollars" subject to appeal to this court. The permissive jurisdiction granted to the commission by the legislature does not deprive the district courts of their jurisdiction.

The issue before us does not involve the type of rate case that is usually within the commission's sole expertise. It is simply a case involving a claim by a ratepayer that he has been overcharged, the resolution of which involves interpretation of a statute. The courts may properly decide this purely legal question. *See Tremblay v. Town of Hudson*, 116 N.H. 178, 179–80, 355 A.2d 431, 432 (1976); *Metzger v. Town of Brentwood*, 115 N.H. 287, 290–91, 343 A.2d 24, 26 (1975). This case does not involve the complex issues of rates, fair return, distribution of rates among classes, or other matters better left to the commission. Ratepayers, of course, may not attempt to challenge the validity of rates or rate components in the district courts in the guise of small claims actions.

RSA 378:6 provides that if a utility's proposed rate schedule cannot be acted upon by the commission within six months, the utility may post a bond and put the rates into effect, thus superseding an existing lower rate tariff. The commission's only role then is to set an adequate bond; it does not set a rate. The utility may collect its new proposed rate during the time period between "six months from the originally proposed effective date" and the end of the suspension period. *Id.* The new rate, therefore, cannot be imposed before six months from the rate's originally proposed effective date, which, in the present case, was June 1, 1977. The commission authorized the defendant to impose the new rate as of December 3, 1977. The defendant, however, imposed the rate upon the plaintiff retroactively by charging for electricity used from November 10, 1977. By so doing, and by failing to prorate its bill, the defendant failed to comply with RSA 378:6.

We have previously held that orders of the commission regarding rates may be applied retroactively. In *Pennichuck Water Works v. State*, 103 N.H. 49, 55, 164 A.2d 669, 673 (1960), the court stated, "[o]n several previous occasions, orders of the Commission have been upheld

by this court, which were retroactive in effect for periods up to at least a month." In cases upholding retroactive application of rates, however, rate orders were put into effect by the commission. In the present case, the defendant company put the rates into effect under RSA 378:6, *without* the approval of the commission but rather by force of the statute. When the company charged its new rate retroactively, the charge was not based upon a commission order.

Tariff schedules implemented under RSA 378:6 have precise beginning dates. Those dates cannot vary from customer to customer depending on the vagaries of the dates upon which meters are read. Bills for tariffs implemented under RSA 378:6 must be computed on an equitable, prorated basis. A pro rata computation is particularly appropriate for billing customers of utilities that may read gas, electric, or water meters every two or three months. The dissenters rely on Tariff Rule No. 29 despite the fact that the commission's letter nowhere mentions the rule. Moreover, the rule could only have effect on rates set by the commission. Otherwise, the rule would have the effect of overruling the statute by making the rates effective sooner than the statute permits.

We hold that the district court committed no error. To avoid a multiplicity of suits, we exercise our supervisory power under RSA 490:4 (Supp. 1977) and N.H. Const. pt. I, art. 73-A (effective November 22, 1978), and order that district and municipal courts hold any other actions similar to this one in abeyance until the commission has had an opportunity to create a repayment fund or bill-crediting procedure to return payments improperly collected by the company.

*Exceptions overruled.*

LAMPRON, C.J., and BOIS, J., dissented; the others concurred.

LAMPRON, C.J., dissenting:

It must be borne in mind from the outset that this is not the ordinary small claims case. The sole issue to be determined is the meaning and legality of Tariff Filing Rule No. 29 of the commission. It reads as follows in pertinent part:

Effective Date of Tariff Change.

a. *Metered Service*

Unless otherwise expressly provided, newly established rates shall be first used in the rendering of all bills based on successive meter readings, *the latter of which* is *taken on or after* the effective date. (Emphasis added.)

It cannot be contested that the legislature granted to the public utilities commission the power to promulgate rules and regulations pertaining to rates to be paid for utility services and the method in which they will be placed in effect. RSA ch. 378; *see State v. New England Tel. & Tel. Co.*, 103 N.H. 394, 397, 173 A.2d 728, 730 (1961). It is also generally conceded that the interpretation which an agency places on its rules is entitled to deference and in some cases can be controlling. *Dept. of Rev. Administration v. Public Emp. Lab. Rel. Bd.*, 117 N.H. 976, 977, 380 A.2d 1085, 1086 (1977). This is due to the expert knowledge which a commission possesses about the operations of the utility which it regulates.

It would be a rare occasion, indeed, when the legislature would want a district court's interpretation of a commission rule to supersede the meaning given to it by that agency. As a matter of fact, the legislature has provided by RSA ch. 378 that the power to make the rules and regulations in regard to utility rates was to rest in the commission, subject to *exclusive* review by this court of the commission's determination as to how the rates are to be placed in effect. (Emphasis added.) *Nashua v. Public Utilities Commission*, 101 N.H. 503, 507, 148 A.2d 277, 280 (1959); RSA 541:22.

The plaintiff's meter was read in accordance with Tariff Filing Rule No. 29 of the commission and the amount of plaintiff's charges arrived at is to be considered correct in the absence of a proper challenge of the legality of the rule. The resolution of such a challenge is in the exclusive jurisdiction of this court. RSA 541:22.

I would enter a judgment for the defendant.

BOIS, J., concurs in the dissent.