Public Utilities Commission
No. 79-143

# APPEAL OF PENNICHUCK WATER WORKS
## (New Hampshire Public Utilities Commission)

September 10, 1980

*Gallagher, Callahan & Gartrell,* of Concord (*Edward E. Shumaker, III,* orally), for Pennichuck Water Works.

*H. Phillip Howorth,* of Nashua, and *Gerald L. Lynch,* of Concord, appearing jointly by brief and orally for the intervenors, City of Nashua and Legislative Utility Consumers' Council.

*Sulloway, Hollis & Soden,* of Concord (*Franklin Hollis* orally), for amici curiae, Concord Electric Company and Exeter & Hampton Electric Company.

BROCK, J. This is an appeal brought by the Pennichuck Water Works pursuant to RSA 541:6 from an order of the Public Utilities Commission (PUC). The order granted Pennichuck's request to establish temporary rates but made them effective on a date later than that requested by Pennichuck.

Pennichuck is a public utility engaged in gathering and distributing water to the public in Nashua and Merrimack. On December 29, 1978, Pennichuck, proposing increased permanent rates, filed new rate schedules to become effective on *all bills rendered* on or after January 31, 1979. Because Pennichuck bills its customers on a staggered quarterly basis, this would have resulted in many of the utility's customers paying higher rates for water which they had already used before December 29, 1978, the date on which Pennichuck initially filed its request for a rate increase. In accordance with RSA 378:3 and the rules of the PUC, public notice of the filing was given in a local newspaper on January 17 and 24, 1979. The notice set January 31, 1979, as the effective date for the proposed rate increases but did not indicate that this referred to a billing date or that the proposal would in

fact result in a retroactive rate increase for services rendered to some customers as far back as November 1, 1978. On January 8, 1979, pursuant to RSA 378:6, the PUC prevented the proposed new rates from going into effect by suspending their effective date pending its investigation.

In response to the suspension order, Pennichuck, on February 12, 1979, filed a petition pursuant to RSA 378:27, :29, requesting approval of its proposed permanent rates as temporary rates, to be effective on "all bills rendered by Pennichuck on or after January 31, 1979, for services theretofore and thereafter rendered." In the event that the PUC ultimately gave the utility a permanent rate increase, the granting of this request would also have resulted in many of the utility's customers paying higher rates for water which they used before December 29, 1978, the date when Pennichuck first filed for a rate increase. RSA 378:29.

The PUC issued its order relating to Pennichuck's petition for a temporary rate increase on April 30, 1979. It denied Pennichuck's request to have its proposed permanent rates established as temporary rates and declined to make the temporary rates effective on all bills rendered on or after January 31, 1979, as requested by Pennichuck. The PUC did, however, allow temporary rates to be established at the same level as the permanent rates which were in effect at the time Pennichuck filed its request for a permanent rate increase, December 29, 1978, and directed that the temporary rates were to take effect on all bills issued on or after April 30, 1979. Because the effective date of temporary rates fixes and preserves the period during which the rates allowed in the underlying permanent rate proceeding may apply, RSA 378:27, :29; *see State v. New England Tel. & Tel. Co.*, 103 N.H. 394, 395, 173 A.2d 728, 729 (1961), this order would allow Pennichuck to apply its new permanent rates on all bills rendered on or after April 30, 1979, thus raising the prospect that the newly-approved permanent rates would be effective on different dates for different customers.

The issue before us, under RSA ch. 541, is whether the PUC has committed any error of law or whether its order is unjust or unreasonable, and Pennichuck has the burden of proving that the PUC's order is clearly unreasonable or unlawful. *Appeal of McKenney*, 120 N.H. 77, 412 A.2d 116 (1980). While the PUC determined that the temporary rates should become effective on all bills rendered on or after April 30, 1979, Pennichuck seeks to have the rates made effective on all bills rendered on or after January 31, 1979. In so doing, Pennichuck-in-essence seeks to have its

permanent rate increase apply to services it has rendered for up to three months prior to January 31, 1979.

Pennichuck argues that the PUC's decision to allow the temporary rates to be effective only on bills rendered on or after April 30, 1979, rather than January 31, 1979, was erroneous as a matter of law. For the reasons set forth below, we conclude that the PUC could not lawfully have established temporary rates to be effective on all bills rendered on or after January 31, 1979, as requested by Pennichuck.

The difficulty which we have with Pennichuck's position is that because it bills its customers on a quarterly basis, should temporary rates be effective on all bills rendered on or after January 31, 1979, all or many of its customers could be charged higher rates for water used by them before Pennichuck had even filed for a rate increase. This squarely raises the question of whether retroactive increases are permissible.

Pennichuck, understandably, relies on a twenty-year-old decision of this court in support of its argument that public utility rate increases may be applied retroactively. *Pennichuck Water Works v. State*, 103 N.H. 49, 164 A.2d 669 (1960). In that case, which ironically involved the same utility, this court did indeed rule that rate increases could be applied retroactively. Recently, we cited *Pennichuck Water Works* in *Nelson v. Public Serv. Co.*, 119 N.H. 327, 330, 402 A.2d 623, 625 (1979), and alluded to the validity of the PUC approving rate increases retroactively. Even more recently, however, we have had occasion to reexamine the continuing validity of the retroactive application of legislative acts to the extent that they affect the rights and obligations of parties who have previously formed a contractual relationship. *Geldhof v. Penwood Associates*, 119 N.H. 754, 407 A.2d 822 (1979). In *Geldhof*, we focused on part 1, article 23 of our State Constitution which states: "[R]etrospective laws are highly injurious, oppressive and unjust. No such laws, therefore, should be made, either for the decision of civil causes, or the punishment of offenses." After examining part 1, article 23, we held in *Geldhof* that the State may not create "a new obligation in respect to a transaction already past." *Id.* We therefore must consider whether the PUC's approval of temporary rates to be effective on all bills rendered on or after January 31, 1979, would have such a result for any of Pennichuck's customers.

▮▮▮▮ The PUC, when it determines rates to be charged by public utilities, is performing essentially a legislative function and accordingly cannot exceed the limitations imposed upon the

exercise of that function under our State and Federal Constitutions. *State ex rel. Utilities Comm'n v. General Telephone Co.*, 281 N.C. 318, 336, 189 S.E.2d 705, 717 (1972). Moreover, the vehicles by which utility rates are set, the tariffs or rate schedules required to be filed with the PUC (RSA 378:1, :3, :5, :6, :7, :27, and :28), do not simply define the terms of the contractual relationship between a utility and its customers. They have the force and effect of law and bind both the utility and its customers. *Teleco Inc. v. Southwestern Bell Telephone Co.*, 511 F.2d 949, 952 (10th Cir.), *cert. denied*, 423 U.S. 875 (1975). *See Dollar-A-Day Rent-A-Car Systems, Inc. v. Pacific Tel. & Tel. Co.*, 26 Cal. App. 3d 454, 102 Cal. Rptr. 651 (1972). As such, the customers of a utility have a right to rely on the rates which are in effect at the time that they consume the services provided by the utility, at least until such time as the utility applies for a change. Once customers consume a unit of those services, they are legally obligated to pay for it and in that sense the transaction has been completed and the charges are set in accordance with the rates then in effect and on file with the PUC or with rates later approved by the PUC based on a pending request for change. If the PUC were to allow a rate increase to take effect applicable to services rendered at any time prior to the date the petition for the rate increase was filed, it would be retroactively altering the law and the established contractual agreement between the parties. In essence, such action would be creating a new obligation in respect to a past transaction, in violation of part 1, article 23 of our State Constitution and, due to the retroactive application, would also raise serious questions under the Contract Clause of the Federal Constitution, U.S. CONST. art. I, § 10, cl. 1; *see Geldhof v. Penwood Associates*, 119 N.H. 754, 755, 407 A.2d 822, 823 (1979). Moreover, "it is a basic legal principle that a rate is made to operate in the future and cannot be made to apply retroactively . . . ." *Southwest Gas Corp. v. Pub. Serv. Comm'n.*, 86 Nev. 662, 669, 474 P.2d 379, 383 (1970).

■■ We are mindful of the fact that public utilities may not increase their rates with the same freedom as an unregulated business. However, even where a product is unregulated, the consumer is confident once he purchases a product that the merchant will not later claim that he is liable for a retroactive price increase on the product. It is true, however, that where a merchant may immediately impose a price increase, a regulated utility may not be able to do so because of delays inherent in the regulatory process. Such delays might well result in a utility being forced to provide services to the public at rates which are

inadequate for it to realize a reasonable rate of return, thereby raising the possibility that the rates being charged during the delay would result in an unconstitutional confiscation from the utility. *See Public Service Co. v. State,* 102 N.H. 66, 150 A.2d 810 (1959). It is also true that public utilities have a right not to be forced to accept rates that are so low as to be confiscatory without the ability to later recoup the rate differential that was lost due to the regulatory delay. *See Oklahoma Gas Co. v. Russel,* 261 U.S. 290, 293 (1922). Both of these constitutional concerns must be taken into consideration and a balance achieved.

■ Accordingly, we hold that the earliest date on which the PUC can order temporary rates to take effect is the date on which the utility files its underlying request for a change in its permanent rates. In no event may temporary rates be made effective as to *services rendered* before the date on which the permanent rate request is filed. Therefore, in the instant proceedings, the PUC can, if it deems Pennichuck entitled to them, authorize temporary rates to take effect on all services rendered by Pennichuck on or after December 29, 1978. In addition, the effective date for temporary rates shall be the same for all customers and shall not depend upon the vagaries of a utility's billing procedures. *See Nelson v. Public Service Co.,* 119 N.H. 327, 402 A.2d 623 (1979).

■ Finally, Pennichuck and amici curiae both raise the argument that the failure of the PUC to grant retroactive rate increases, such as those proposed here, results in public utilities being forced to service the public at rates that are confiscatory and therefore unconstitutional. *See Bell Tel. Co. v. Utility Comm'n,* 309 U.S. 30 (1940). Under the procedure that is set forth in this opinion and the order of the PUC that is presently before us, such an argument is without merit. Our decision today merely requires that public utilities, like other businesses, monitor their costs of doing business and employ sound business judgment in determining when they should seek a rate increase for future services. We see no constitutional requirement that mandates the PUC to correct, retrospectively, past errors in judgment made by the utility. In this regard, we note that RSA 378:7 provides that the PUC is "under no obligation to investigate any rate matter which it has investigated within a period of two years, but may do so within said period at its discretion." On its face, this statute complicates the matter of requesting rate increases on the part of a utility's management and, to a degree, locks utilities into a two-

year period between rate increases. However, we have previously stated that the PUC is under an "obligation to fix a rate of return which will meet the constitutional standards not only at the time the order is made but for a reasonable period of time thereafter." *New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 96, 302 A.2d 814, 817 (1973). Moreover, the PUC may, in its discretion, act on requests for rate increases within the two-year period set forth in RSA 378:7.

Because our decision today sets forth the constitutional parameters attending the issuance of temporary rate orders by the PUC and it is not clear on the record before us that the PUC would have decided this matter as it did had it been aware of the full extent of its authority, we remand the case for further proceedings not inconsistent with this opinion.

To the extent that *Pennichuck Water Works v. State*, 103 N.H. 49, 164 A.2d 669 (1960), is inconsistent with this opinion it is overruled.

*Remanded.*

All concurred.