Public Utilities Commission
No. 87-364
No. 86-505

### APPEAL OF VICON RECOVERY SYSTEMS, INC.

AND

### APPEAL OF PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE
### (New Hampshire Public Utilities Commission)

August 8, 1988

*Brown, Olson & Wilson,* of Concord (*Robert A. Olson* and *Rose L. Duggan* on the brief, and *Ms. Duggan* orally), for Vicon Recovery Systems, Inc.

*Sulloway, Hollis & Soden,* of Concord (*Margaret H. Nelson* on the brief and orally), for Public Service Company of New Hampshire.

*Stephen E. Merrill,* attorney general (*Monica A. Ciolfi,* attorney, on the brief), by brief for the State, as *amicus curiae.*

BATCHELDER, J.   The public utilities commission (the commission) issued a conditional long-term rate order to Vicon Recovery Systems, Inc. (Vicon) for electricity to be produced by a proposed municipal solid waste facility in Manchester. After further proceedings before both this court and the commission, the commission found that Vicon had failed to meet the conditions specified in the rate order and rescinded it. Vicon appeals the commission's decision to rescind on grounds that it was unlawful, unjust and unreasonable. *See* RSA 541:13. Since we find that Vicon has failed to meet the burden of proof specified by RSA 541:13, we affirm the commission's decision in No. 87-364 and dismiss the appeal in No. 86-505.

Vicon's primary business is the development of municipal solid waste combustion facilities designed to produce electricity. Such facilities are classified as qualifying small power producers under the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C.A. § 824a-3 (1985), and New Hampshire's Limited Electrical Energy Producers Act (LEEPA), RSA ch. 362-A. These laws were enacted by both the Congress and the State legislature to promote the development of small power production of electricity as an alternative source of energy. *See Appeal of Public Serv. Co. of N.H.,* 130 N.H. 285, 287, 539 A.2d 275, 276 (1988). Both PURPA

and LEEPA contain provisions requiring electric utilities to purchase electric energy from qualifying small power producers at rates set by the respective federal and State commissions. 16 U.S.C.A. § 824a-3(a), (b); RSA 362-A:2-a, :4. Pursuant to PURPA and LEEPA, the commission had previously issued orders outlining the methodologies which it would use to determine short-term and long-term rates at which electricity would be purchased from small power producers by Public Service Company of New Hampshire (PSNH). *See* Docket DE 83-62, Report and Supplemental Order No. 17,104 (July 5, 1984) and Docket DR 85-215, Order No. 17,838 (September 5, 1985).

In accordance with these orders, on April 11, 1986, Vicon petitioned the commission for a long-term rate after the City of Manchester Department of Highways accepted Vicon's proposal for a solid waste to energy facility. The petition described the facility and its location, and included a copy of the proposed interconnection agreement with PSNH (which had not yet been submitted to PSNH at the time of the petition) and the long-term rate worksheets, as required by DR 85-215. On June 18, 1986, Vicon submitted a response to the commission's data requests, ordered on May 8, 1986. In summary, Vicon informed the commission that the facility would provide services to Manchester and surrounding communities and that it was negotiating the terms of the service agreement with the municipalities. Vicon predicted that the agreement with Manchester would be completed by July 1986. Moreover, Vicon predicted that the latest date for the completion of all the necessary federal, State and local permits and financing agreements would be December 31, 1986.

On August 1, 1986, without holding hearings on Vicon's petition, the commission issued a conditional order approving a 20-year rate structure. However, the order provided "that the long term rate so granted Vicon is null and void if Vicon does not provide the Commission with an affidavit attesting to the finalization of its financing, construction permits and agreements with participating municipalities by January 1, 1987." The order also provided that "PSNH may file comments, exceptions or such other response to this instant petition as it deems necessary . . . ."

On August 19, 1986, PSNH filed a motion for a hearing, in which it stated, among other things, its objection to the rate order on the ground that Vicon failed to demonstrate sufficient project maturity at the time it applied for a long-term rate. The commission denied both PSNH's motion for a hearing and its subsequent motion for a rehearing and, as a result, PSNH filed an appeal from the

commission's orders with this court on December 12, 1986, which was docketed as No. 86-505.

On December 31, 1986, Vicon submitted an affidavit to the commission in which it explained that because of the litigation over the long-term rate order, Vicon could not complete its financing and service agreements for the project. On February 3, 1987, the commission ordered Vicon to appear before it to show cause why the long-term rate order should not be found null and void. In response to that order, PSNH filed with this court a motion for remand of its appeal under RSA 541:14, which we granted on February 17, 1987.

The show cause hearings were held on April 8 and June 10, 1987, during which Vicon's witnesses testified that the uncertainty created by PSNH's appeal of the long-term rate order prevented Vicon from completing its agreements with the municipalities and financing companies. PSNH witnesses contradicted Vicon's arguments and testimony by maintaining that Vicon was aware of the difficulties caused by PSNH's appeal as early as August, yet failed to notify the commission about the problems until December 31.

On July 13, 1987, the commission issued an order rescinding Vicon's long-term rate, which it filed with this court on July 27, 1987, in accordance with the remand order. The commission found, with one commissioner dissenting, that "Vicon's rate petition has proved to be premature," and concluded that it would not grant an extension of time to fulfill the conditions. Vicon's motion for rehearing was denied, and an appeal was taken, docketed as No. 87-364, and consolidated with PSNH's appeal in No. 86-505.

■■ Since the commission's decision on the remand moots PSNH's appeal, Vicon has the burden in this consolidated appeal of showing commission error. Vicon correctly identifies its burden of proof under RSA 541:13, which states:

> "Upon the hearing the burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable."

On questions of fact, this court will not set aside an administrative agency's decisions simply because we would have reached a different conclusion. *Appeal of Kingswood Trust & Savings Bank,* 123 N.H. 7, 10, 455 A.2d 1027, 1029 (1983). A party appealing an agency's decision carries the burden of demonstrating that the agency's findings are "unlawful, unjust or unreasonable." *Appeal of Dep't of Safety,* 123 N.H. 284, 285, 461 A.2d 98, 99 (1983).

Vicon presents four arguments to support its claim that the commission's order rescinding the rate order is unlawful, unjust and unreasonable. First, it contends that the commission erred in refusing to acknowledge PSNH's appeal as a valid reason for Vicon's good faith failure to meet the conditions of the rate order before January 1, 1987. In support of this argument, it relies on the interconnection agreement with PSNH, which the commission approved. The interconnection agreement contains provisions for the transmission of electricity between Vicon's and PSNH's generating facilities, the metering service to measure the flow of electrical energy from Vicon's facility to PSNH, and the billing and payment schedule between the parties. Vicon relies specifically on provisions establishing that a party shall not be considered in default for any cause beyond the reasonable control of either party. In addition, Vicon relies on the contract doctrines of impossibility of performance (which Vicon incorrectly refers to as the doctrine of impracticability) and commercial frustration to support its argument that Vicon should not be held to the conditions, where the inability to meet them was caused by another party.

Vicon's arguments are unpersuasive. Neither the interconnection agreement nor the doctrines of impossibility of performance and commercial frustration apply to the commission's orders. The interconnection agreement was submitted to the commission for its approval pursuant to DE 83-62. The agreement provides for the physical interconnection between Vicon's and PSNH's facilities, but it does not pertain to rates as set by the commission. Even assuming it applies to the conditional rate order at the time Vicon submitted the agreement, PSNH had neither seen nor signed the document. It cannot then be said that the terms of the agreement apply to Vicon's inability to fulfill the conditions of the rate order.

■■ Likewise, the doctrines of impossibility of performance and commercial frustration do not apply here because Vicon's obligations do not arise out of a contract, but rather an order issued by the commission, which has the "force and effect of law." *Appeal of Pennichuck Water Works,* 120 N.H. 562, 566, 419 A.2d 1080, 1083 (1980). We give the commission broad discretion in interpreting and

enforcing its orders, and will not interfere with its orders unless they are unlawful or unreasonable.

■ The commission answered Vicon's argument, that it was excused from fulfilling the conditions because PSNH's appeal was an event beyond its control, by noting that pursuant to RSA 365:21 all orders issued by the commission are subject to motions for rehearing and appeals. The commission concluded, therefore, that even if Vicon was not prepared for the delays apparently caused by PSNH's appeal, it certainly could not reasonably argue that the appeal was unexpected. In its petition for a long-term rate, Vicon listed references to other solid waste to energy projects for which it has been retained. As an experienced participant in the administrative process, Vicon is aware that businesses cannot operate today without complying with regulations and orders issued by relevant agencies. Moreover, contrary to its arguments, Vicon should also know that compliance involves more than following the relevant regulations and obtaining the necessary orders; it also involves accommodating the rights of interested parties to comment on or object to orders or regulations issued by the agencies. Because PSNH is required by law to purchase electricity from small power facilities such as Vicon's project, if the commission issues a valid order, PSNH is an obviously interested party which may challenge the rate order. Indeed, as the commission noted, Vicon's conditional rate order provided for PSNH's comments or other responses. Nevertheless, despite the fact that Vicon was put on notice that PSNH could challenge the rate order, and the fact that PSNH did challenge it as early as August, 1986, Vicon did not notify the commission until December 31, 1986, about the difficulties it was having with completing the necessary agreements. In light of the commission's thorough description of Vicon's circumstances after it issued the long-term rate order, we hold that its decision was neither unlawful nor unreasonable in refusing to acknowledge PSNH's appeal as a valid reason for Vicon's failure to meet the conditions.

Vicon contends, as a second argument, that it satisfies the burden of proof under RSA 541:13 by showing that no evidence was presented to support the commission's finding that Vicon could have prepared conditional agreements by January 1, 1987, to meet the requirements imposed by the rate order. *See Appeal of Granite State Elec. Co.*, 121 N.H. 787, 791, 435 A.2d 119, 121 (1981). Vicon cites the following statements from the commission's rescission order as findings made without the support of any evidence:

"Having found that Vicon's rate petition has proved to be premature, we can not grant it additional time to fulfill the conditions set by the Commission without granting it preferential treatment compared to projects whose developers have resolved the issues of risk sharing in the context of rate uncertainty prior to filing and have then filed timely petitions. Other developers facing the uncertainty of rates have negotiated resolutions entailing conditional agreements and financings. We would expect that Vicon and the City of Manchester, if they continue to pursue the waste to energy option for refuse disposal, would be able to reach similar arrangements. Once those arrangements have been negotiated, Vicon will then be in a position to file a timely petition for a long term rate."

Docket DR 86-130, Order No. 18,784 (July 13, 1987). Vicon maintains that no evidence was submitted to show how other developers have been able to negotiate conditional agreements. Moreover, it argues that the commission's decision not to grant an extension of time is inconsistent with its treatment of other projects. It relies on the dissenting opinion's reference to *New England Alternate Fuels, Inc.*, Docket DR 86-87, Order No. 18,830 (September 15, 1987) (NEAF/ET), in which New England Alternate Fuels (NEAF) and Energy Tactics, Inc. (ET) petitioned the commission for a long-term rate on March 10, 1986. In that case, the commission issued a long-term rate order in September 1986, in which it declared that the long-term rate order would be null and void if NEAF/ET failed to achieve commercial operation within a certain time period. Vicon argues, therefore, that the commission should have used the expected date of on-line operation, rather than the expected dates of the completion of the agreements, as the final deadline.

Vicon mistakenly describes as "findings" the commission's reference to conditional agreements as an alternative means of meeting the requirements in the rate order. The commission was not making findings; rather, it was making observations on what Vicon could have done to meet the imposed conditions. The critical finding was that Vicon's project was not sufficiently mature to receive a long-term rate order. In deciding that the project was premature for a rate order, the commission relied on the fact that neither Vicon nor the City of Manchester was willing to accept the risks involved with a conditional long-term rate order subject to PSNH's appeal. The unwillingness of the two parties to complete a service agreement by January 1, 1987, even though Vicon's

petition had advised the commission that the agreement would be completed no later than July 1986, provides ample support for the commission's conclusion. We find this case distinguishable from *New England Alternate Fuels, Inc.*, DR 86-87, because in the latter case, the commission issued NEAF/ET's long-term rate order, in which it granted NEAF/ET's request for an extension of the on-line date, after the benefit of two hearings and receipt of PSNH's comments. Unlike Vicon, NEAF/ET applied for a modification of the deadline date before the rate order was even issued. We see no reason why Vicon should expect the commission to handle its request for modification similarly, when the request was made only at the time of the deadline set forth in the order, rather than sometime before the order was issued.

As a third argument, Vicon contends that the commission's order was unjust and unreasonable in finding that the dates submitted by Vicon and incorporated by the commission in the rate order, as the anticipated dates when the relevant agreements would be completed, provide for the delays involved in PSNH's appeal. Vicon argues that the commission ignored uncontradicted testimony that it had submitted the dates without anticipating either the use of the dates as conditions for the rate order or the time delays which would be caused by PSNH's objections to the order. Like Vicon's first argument, this argument is unpersuasive. Even if Vicon did not anticipate either inclusion of the conditions in the order or PSNH's appeal, its lack of foresight does not excuse its failure to notify the commission of its inability to meet the conditions until December 31, 1987, even though Vicon knew, or should have known, as early as August 1986, that it would not be able to meet the deadlines.

Finally, Vicon argues that the commission's decision was unreasonable because the commission held that the project planning was premature at the time Vicon filed the petition for a long-term rate. Vicon contends that the determination of the project's maturity should be based on whether there is a reasonable expectation that the project will be on-line by August 1989, rather than on whether the developer could meet the conditions set forth in the rate order. Vicon's argument is unconvincing because the long-term rate order clearly stated that the order would be declared null and void if the specified conditions were not met. If Vicon objected to the conditions at the time the order was issued, or even at the time PSNH filed a motion for a hearing challenging the project's maturity, it could have notified the commission of its objection at those times.

■ We conclude that there is no reason to set aside the order of the commission rescinding the long-term rate order. Because the order has been rescinded, the issues in PSNH's appeal are moot and that appeal is therefore dismissed.

*No. 87-364, affirmed; No. 86-505, appeal dismissed.*

All concurred.