Public Utilities Commission, } No. 4092.
Nov. 5, 1951.

PETITION OF PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE.

*Franklin Hollis* (by brief and orally), for the Public Service Company of New Hampshire.

*Gordon M. Tiffany,* Attorney General and *John N. Nassikas,* Assistant Attorney General (*Mr. Tiffany* and *Mr. Nassikas* orally), for the State of New Hampshire.

*Eugene S. Daniell, Jr.,* solicitor (by brief and orally), for the city of Franklin, opposed.

*Robert P. Bingham* (by brief and orally), for the Office of Price Stabilization for the District of New Hampshire, opposed.

BLANDIN, J. All parties agree that the question before us is

whether assuming for the purposes of this proceeding only that the allegations of the petition are true, the Public Utilities Commission may find upon them and the accompanying exhibits that an emergency exists under our laws. We believe that such a finding may be made, but we wish it to be clearly understood that nothing in this opinion is to be taken as any indication that the commission should or should not find that an emergency exists. That is for them to say, with or without a hearing, as they see fit.

It appears our first task is to decide the meaning of "emergency" as used in R. L., c. 292, s. 9, as inserted by s. 46, c. 203, Laws of 1951, which reads as follows:

"9. EMERGENCY. Whenever the commission shall be of the opinion that an emergency exists it may authorize any public utility temporarily to alter, amend or suspend any existing rate, fare, charge, price, classification or rule or regulation relating thereto."

Presumably, the Legislature meant the word to have its common meaning (R. L., c. 7, s. 2) which is synonymous with crisis. Roget's Thesaurus, Int. Ed., s. 704, p. 298. The "Temporary Rates" section of the same chapter (s. 27) with its provisions for notice, hearing and a reckoning of rates on a prescribed basis is obviously a time consuming procedure. For this reason we believe the Legislature in section 9 above gave the commission broad emergency powers. There is not the slightest suggestion in the wording of this section that the commission's discretion was to be qualified or restricted except within the bounds of reason. Nor is there anything to indicate that the Legislature had in mind any extraordinary or unusual meaning for the word, and we see no occasion for reading such into the statute. Obviously, emergency cannot be defined with absolute precision; latitude must be allowed for reasonable differences of opinion. We believe that the Legislature, in accordance with the general policy which runs throughout our law, intended by section 9 to vest in the commission as a fact finding body wide discretionary powers to decide whether a crisis is of sufficient severity to warrant relief and if so the extent of the relief. This construction of the statute permits those most intimately acquainted with the facts to pass judgment on a question which is essentially one of fact, rather than in effect leaving it for the law court to decide.

There is nothing in our decisions, or by the weight of authority elsewhere (29 C. J. S., Emergency, 760-762) to support the claim that the crisis must necessarily be unforeseen, or sudden, or unex-

pected, although actually here operations have unexpectedly failed to yield the company the rate of return to which the order of the commission held it was entitled. On the contrary, in the case of *New England Tel. & Tel. Co.* v. *State*, 95 N. H. 58, where an emergency was held to exist the approach of the difficulty had been foreseen for some time. There the court said that whether there was an emergency depended on the "immediate needs of the company. . . ." (P. 62). Similarly, we believe the *urgency of this petitioner's needs* and not the time nor manner of their arrival is decisive. This it appears is the *rationale* of the *Telephone* opinion and any statements therein which might be read as qualifying or denying this principle apply only to the facts of that case and are not controlling here. *Cf.* also *Re New England Telephone & Telegraph Co.*, 89 P. U. R. n. s. 80. In this case in a situation almost identical with the one before us, it was held an emergency existed. We believe, therefore, that the test to determine whether the emergency statute may apply here is to inquire whether reasonable persons may find the affairs of this company are at such a crisis that immediate and substantial disaster threatens unless prompt relief is given.

With this principle as our guide, we turn now to the petition which, with its allegations, accompanying exhibits and the reasonable inferences that may be drawn from them, disclose the following facts: The company *"must* expand in order to meet the demands of the public for additional service." 33 N. H. P. S. C. 134, 153. (Emphasis supplied.) This involves raising $17,000,000 of additional capital within the next fifteen months. Of this, $3,000,000 must, and $5,000,000 should be forthcoming from permanent financing before December 31, 1951, to pay loans due for past construction and to pay for required expansion of services. It is conceded that the sale of common stock is the only practical way to raise this money. However, due to low earnings under present rates, the company cannot sell its common stock. The only way to make this stock salable is to raise rates. If this is not done immediately, there will be no funds to complete construction now under way or to begin new construction. Payment of present bank loans will be impossible and their renewal will be difficult. The State's brief concedes that the petition makes out a case of insolvency of the company in that it cannot pay its obligations as they mature. All this will mean drastic curtailment of the necessary construction program now under way with immediate and future losses to the public and the company. On these facts, admitted for the pur-

poses of this proceeding to be true, we are asked by the opponents of the petition to rule as a matter of law that no reasonable person could find that an emergency exists under our statute. We do not believe such a ruling may fairly be made, as we think reasonable persons if the facts are as alleged could find that an emergency does exist. In so holding, we are well aware of the danger of abuse inherent in this and like situations. However, this does not authorize us to ignore the intent of the Legislature by defining emergency as something other than what we believe they intended it to mean.

It follows that our answer to the question certified by the Public Utilities Commission is yes.

JOHNSTON, C. J., concurred.

KENISON AND LAMPRON, J. J., are of the opinion that the company's petition does not state an emergency within the meaning of R. L., c. 292, s. 9, as amended, authorizing the Public Utilities Commission to grant an increase of rates without bond or a hearing but rather a case for temporary rates which may be granted only after hearing (s. 27) and the discretionary requirement of a bond (s. 30). The emergency statute is applicable only when "reasonable temporary rates" (s. 27) will not provide effective relief. *Omaha &c. Ry. Co.* v. *Nebraska Ry. Commission,* 103 Neb. 695.

The order of the court is that the case be *discharged.*

DUNCAN, J., was absent.