Public Utilities Commission
No. 78-131

# ROBERT W. MESERVE AND BENJAMIN H. LACY,

## TRUSTEES OF BOSTON AND MAINE CORPORATION

### v.

## THE STATE OF NEW HAMPSHIRE

March 23, 1979

*Wiggin & Nourie*, of Manchester (*Gordon Rehnborg* orally), for the plaintiff.

*Thomas Rath*, attorney general (*James E. Morris*, assistant attorney general, orally), for the State of New Hampshire.

LAMPRON, C.J.   This is an appeal by the Boston & Maine Corporation from a public utilities commission order, which placed the costs of maintaining railroad warning signals for a railroad crossing onto the corporation. We affirm.

The New Hampshire Department of Public Works and Highways (hereinafter department) filed a petition requesting the public utilities commission (hereinafter commission) to issue an order authorizing the construction of a system of warning signals and grade crossings over the tracks of the Boston & Maine Railroad. The grade crossings were necessary in order to complete an extension of Route 101 in Milford. After a hearing, the commission issued order No. 12, 760, which authorized construction of the grade crossing and the signal system. The commission also ordered "that all costs of constructing and installation, together with the maintenance of the crossing protection devices shall be borne by the State of New Hampshire." Neither party appealed this order.

On July 15, 1977, thirty-eight days after the statutory time to file for a rehearing had expired, the department asked the commissioner to reconsider its order in light of an apparent statutory conflict. "[T]he Commission recognizing the importance of statutory interpretation in this matter and recognizing that order No. 12,760 represented a departure from previous decisions of the Commission," granted the request for reconsideration and held another hearing. The department argued that RSA 373:10, which reads, "[t]he railroad shall maintain signs, signals, gates or other equipment . . . ," requires

that the railroad, not the State, assume sole responsibility for the cost of maintaining the signal devices. The commission agreed that its previous order was contrary to this statutory directive, and consequently issued order No. 13,121, which stated "that all costs of maintaining the protective crossing signalization shall be borne by the Boston & Maine Corporation."

After a denial of its motion for rehearing, the railroad, pursuant to RSA 541:6, appealed directly to this court challenging both the commission's jurisdiction to issue a supplemental order and the substance of this order. The State filed a motion to dismiss arguing that the railroad should first have appealed to the superior court.

The question that this court must address at the outset is whether the appeal process provided by RSA 373:8 is the exclusive means of obtaining review of a commission order that apportions costs for railroad warning signals. The State argues that RSA 365:21, and RSA 373:8, read together, demonstrate that the appeal properly lies only in the superior court. RSA 365:21 provides that all appeals from the commission are to be governed by the provisions of RSA ch. 541, "except as herein otherwise provided." The State contends that RSA 373:8, which provides that appeals from the commission's decisions concerning railway grade crossings are to be brought in superior court, is in the "otherwise provided" category, and concludes that this case should be dismissed by this court.

We have previously recognized the different purposes of the two appeal provisions. "RSA 373:8 provides for appeal to the Superior Court from an order apportioning costs and RSA ch. 541 provides for appeals of decisions directly to the Supreme Court upon a claim that the order was unlawful." *Petition of Boston & Maine Corp.* 109 N.H. 324, 326, 251 A.2d 332, 334 (1969). The Boston & Maine Corporation challenges the legality of the commission's jurisdiction to issue a supplemental order and the legality of the very substance of that order. Therefore we will entertain the railroad's appeal under the provisions of RSA ch. 541.

The railroad contends that the commission's supplemental order was improperly issued. Specifically, the railroad argues that the department could not ask for reconsideration of a commission order after the twenty-day time period for application for rehearing had elapsed, and consequently the commission had no jurisdiction to either hear or grant the request. The railroad bases its argument on RSA 541:3, which reads:

> Within *twenty days* after any order or decision has been
> made by the commission, any party to the action or proceed-
> ing before the commission or any person directly affected
> thereby may apply for a rehearing in respect to any matter
> determined in the action or proceeding, or covered or in-
> cluded in the order. . . . (Emphasis added.)

The railroad concludes that the department, as a party, and the com-
mission, as the adjudicative body, are bound by the twenty-day time
limitation. The department, on the other hand, contends that RSA
365:28 grants the commission jurisdiction to issue the supplemental
order. RSA 365:28 states that, "[a]t any time after the making and
entry thereof, the commission may, after notice and hearing, alter,
amend, suspend, annul, set aside or otherwise modify any order made
by it." Such a provision should be liberally construed. 64 AM. JUR. 2d
*Public Utilities* § 232 (1972).

■ We must decide whether the time limitation imposed in RSA
541:3 restricts the commission's statutory power to alter or modify an
ultra vires order. RSA ch. 541 is procedural in nature; it is designed to
provide uniform procedures which a party must follow before an
appeal can be perfected. RSA 541:2. We hold that RSA 541:3 does not
affect the commission's substantive power to modify an ultra vires
order made pursuant to RSA 365:28. The fact that the commission's
review may have been prompted by the department's petition is irrele-
vant. *See Central Ry. New Jersey v. Dep't of Publ. Util.*, 7 N.J. 247,
254–55, 81 A.2d 162, 165–66 (1951).

■ The commission's statutory power to reconsider and modify an
existing order is not unlimited. *Union Electric Co. v. Illinois Com-
merce Comm'n*, 39 Ill. 2d 386, 235 N.E.2d 604, 610 (1968); *see Allied
N.H. Gas Co. v. Tri-State*, 107 N.H. 306, 308, 221 A.2d 252, 253 (1966).
The amendment or rescission must still meet the requirement of due
process and must be legally correct. The railroad does not contend that
it was denied notice and a hearing before the original order was
supplemented; rather, it challenges the legality of the new order.
Specifically, it argues that the commission was legally incorrect in
mandating that the railroad, not the State, had to be solely responsible
for the costs of maintaining the warning signals.

■ RSA 373:10 requires the railroad to "maintain signs, signals,
gates or other equipment." The railroad argues that this provision
requires the railroad to provide only the physical maintenance, not the
costs of such maintenance. It is true that RSA 373:10 does not specifi-

cally state that the railroad must actually pay the costs of such maintenance. Nevertheless, we are convinced that the duty to maintain "inescapably carries with it the implied duty of the railroad company to bear all expenses incident [to such maintenance]." *Maricopa County v. Corp. Comm'n of Ariz.*, 79 Ariz. 307, 312, 289 P.2d 183, 186 (1955).

The railroad next contends that even if it is obligated to bear some of the maintenance costs it should not be forced to pay the entire amount. The reason the commission modified its original order was that it believed it lacked the statutory authority, in view of RSA 373:10, to assess any costs of maintaining the signals to the State. To decide whether the commission's interpretation is correct we must delve into the legislative history of this law.

Laws 1935, ch. 65, which preceded RSA 373:10 provided that:

> The costs of installing, operating and *maintaining any such gates, signal or other protective device* or of providing such flagman or of clearing the land of obstructions *shall be apportioned* by the commission *between the railroad passing over the crossing, the city or town in which the highway is located and the state of New Hampshire* equitably and in accordance with the relative benefit to be derived by each from such protection. . . . (Emphasis added.)

Similar language was contained in Laws 1942, ch. 299:35, which remained in effect until 1951. RSA 373:10 was enacted in 1951, and reads in full:

> Every railroad shall construct, or improve, and operate and maintain at every grade crossing of its railroad with another railroad or highway such warning signs, gates or other protection; it shall so regulate the speed of its trains across any grade crossing and it shall give such appropriate warning of the approach of its trains to any grade crossing as the commission, after notice and hearing, may find necessary in the interest of safety of the railroad or of the public; provided, however, that cost of constructing or improving such warning signs, gates or other protection shall be apportioned in accordance with the provisions of section 3 of this chapter. The railroad shall maintain signs, signals, gates or other equipment, installed within the limits of its right of way, after the installation thereof.

Whereas the specific terms of the previous statute allowed for the apportionment of maintenance costs, RSA 373:10 contains no such

authorization. Under RSA 373:10 only construction and improvement costs may be apportioned. The omission of language allowing for apportionment of maintenance costs coupled with the specific language permitting apportionment for certain specified costs is evidence of a deliberate legislative intention to prohibit the practice of apportioning maintenance costs for warning signals. We therefore hold that the clear import of RSA 373:10 is to mandate that maintenance costs of warning signals must be borne solely by the railroad. *See Atchison & S.F. Ry. v. Publ. Util.Comm'n,* 547 P.2d 234, 235–36 (Colo. 1976); *see Boston & Maine Corp. v. State,* 109 N.H. 547, 549–50, 261 A.2d 267, 269 (1969).

The railroad argues that it is unreasonable to assess it for the entire cost of signal maintenance, because the State will receive all of the benefits from the construction of the grade crossing.

> [W]hen the commission has legally found that the hazards at the crossing create the degree of danger that safety measures are required to adequately protect the health and safety of the public, it should require reasonable protective measures at the cost of the company irrespective of the relative benefit accruing to the public. *The statute in effect says that under such conditions it is reasonable to require the company to pay all and the commission cannot find to the contrary. Southern Pac. Co. v. Corp. Comm'n,* 83 Ariz. 333, 338, 321 P.2d 224, 227 (1958). (Emphasis added.)

The reasonableness of this practice of apportionment is a policy question that has been addressed by the legislature, and we see no reason to override it.

██ Finally the railroad argues that even if the commission had the jurisdiction to supplement its previous order, and even if the supplemental order was legally correct, it should not be permitted to alter its previous order because of the bar of res judicata. "As a matter of principle it is absolutely clear that the reasons behind the doctrine of res judicata as developed in the court system are fully applicable to *some* administrative proceedings." 2 K. DAVIS ADMINISTRATIVE LAW TREATISE § 18.02, at 548 (1958) (emphasis in the original); *accord, Morin v. J.H. Valliere Co.,* 113 N.H. 431, 309 A.2d 153 (1973). When an administrative agency makes an erroneous interpretation of law, the bar of res judicata is not conclusive. *Board of County Comm'rs v. Racine,* 24 Md. App. 435, 448–52, 332 A.2d 306, 314–15 (1975); *see* 2 K. DAVIS, *supra* § 18.03. And when, as here, the legislature has directed

the agency to exercise continuous jurisdiction by authorizing the power to "alter, amend, suspend, annul, set aside, or otherwise modify," any of its previous orders, the doctrine of res judicata will not apply to prevent the agency from exercising its statutory power to correct a mistake of law. *See Canada v. Peake Inc.*, 184 Neb. 52, 55, 165 N.W.2d 587, 590 (1969). *See generally* 2 K. DAVIS § 18.09; 2 AM. JUR. 2d *Administrative Law* §§ 496, 501, 502 (1962). To hold otherwise would prevent the commission from carrying out its statutory responsibility. Accordingly, the public utilities commission's order must be

*Affirmed.*

All concurred.