Public Utilities Commission
No. 90-254
No. 90-476

APPEAL OF THE OFFICE OF THE CONSUMER ADVOCATE
(New Hampshire Public Utilities Commission)

October 4, 1991

*Michael W. Holmes,* consumer advocate (*Joseph W. Rogers,* assistant consumer advocate, on the brief and orally), for the Office of the Consumer Advocate.

*McLane, Graf, Raulerson & Middleton P.A.,* of Manchester (*Mark C. Rouvalis* on the brief, and *Steven V. Camerino* orally), for Southern New Hampshire Water Company, Inc.

*John P. Arnold,* attorney general (*Harold T. Judd,* assistant attorney general), for the State, and *Audrey A. Zibelman* for the New Hampshire Public Utilities Commission, by brief, as *amici curiae.*

BATCHELDER, J. The Office of the Consumer Advocate (OCA) appeals from decisions of the New Hampshire Public Utilities Commission (PUC), modifying an order issued in a previous rate case and granting Southern New Hampshire Water Company, Inc.'s (Southern) petition for a temporary rate increase pursuant to RSA 378:27. The OCA argues that the PUC had no authority to modify its prior order and, alternatively, that in doing so, it violated RSA chapter 541-A and denied consumers due process. Further, it contends that the PUC's temporary rate order is invalid, because an impartial tribunal would not have granted Southern's temporary rate request based on the evidence that was properly admitted during the hearings held on Southern's petition. For the reasons that follow, we affirm both of the PUC's decisions.

I. *Facts and Procedural History*

The decisions from which the OCA appeals were issued in PUC docket DR 89-224, which was opened when Southern initiated a request for a rate increase by filing a "Notice of Intent to File Rate Schedules" with the PUC on November 28, 1989. *See* N.H. ADMIN. R., Puc 1603.02. Southern is a wholly-owned subsidiary of Consumers Water Company, a holding company based in Portland, Maine, which owns and operates eleven water utilities, serving 218,000 customers in seven states. On January 25, 1990, Southern prefiled testimony and exhibits in support of its request for increased rates. In its letter accompanying these documents, the company stated that it was "seeking to place the proposed rates into effect as either emergency rates or temporary rates."

A. *Modification order*

In order No. 19,711, issued on February 12, 1990, the PUC rejected Southern's filing as incomplete because, among other things, Southern had failed to submit a depreciation study required by a stipulation, entered into by the parties to a previous rate case, which was adopted by the PUC. *See Re Southern New Hampshire Water Company, Inc.,* 73 N.H.P.U.C. 305, 314 (1988). The purpose of a depreciation study is to determine the service lives of a utility's equipment, and the corresponding yearly depreciation cost of that

equipment. Southern's last depreciation study had been performed several decades ago. Representatives of the company met with PUC staff members on February 16, 1990, to discuss order No. 19,711, and an agreement was reached whereby the staff would recommend to the PUC that the depreciation study requirement be waived for the present rate proceeding. Instead, Southern would be required to present a new depreciation study at least six months prior to the filing of the next rate case. On February 27, 1990, Southern filed a motion for reconsideration and rehearing of order No. 19,711, urging the PUC to adopt this agreement and waive the depreciation study requirement. Southern nonetheless filed a "study of depreciation" on March 9, 1990, in an attempt to comply with the stipulation.

The OCA objected to Southern's motion for reconsideration. In its objection, the OCA argued that the requirement of a depreciation study could not be waived because it was included in the stipulation which had been made part of a PUC order, and that this order could not be modified without notice to the parties to the prior proceeding and a hearing. The PUC granted Southern's motion for reconsideration in part on March 13, 1990, accepting the agreement between its staff and the company with the exception of the waiver of the depreciation study. With regard to that issue, the PUC ordered that a hearing be held on April 3, 1990, to determine whether its previous order in 73 N.H.P.U.C. 305 should be modified.

Notice was sent to each of the signatories to the stipulation, and a hearing was held on April 3, 1990. During the hearing, Robert B. Lessels, the PUC staff water engineer, testified that, in his opinion, the "study of depreciation" submitted by Southern was not a true depreciation study, which measured the service lives of Southern's equipment, but rather a comparison of Southern's depreciation rates with those of other water utility companies. After deliberating in executive session, the PUC modified its prior order on April 24, 1990, by ruling that Southern would not be required to file a depreciation study prior to filing the rate case in docket DR 89-224, but that it would be required to file one within six months of completion of the rate case "unless the commission directs otherwise." The PUC granted the modification "in reliance on the allegation that Southern is in need of expeditious relief due to its precarious financial position," and "only [to] allow[ ] the instant rate proceeding to move forward," noting that the company's "allegation of financial emergency may not withstand evidentiary scrutiny." It also recognized that its staff had "stipulated to such a waiver based on the fact that historical

data provided by other similar water utilities shows that a depreciation study would merely increase the rates requested by Southern in this case."

The OCA filed a motion for rehearing of the PUC's decision, which the PUC denied on May 14, 1990. The OCA then filed the present appeal, which we docketed as No. 90-254.

## B. *Temporary Rate Order*

The PUC held hearings on Southern's request for temporary/ emergency rates on June 21 and June 28, 1990. On the first day of the hearings, the OCA filed a motion to have the PUC designate certain staff members as either advocates or decisional employees. In support of its motion, the OCA stated that "this will allow Staff to make commitments to a particular result and prevent ex parte communications. It would be inappropriate for Staff members to both provide advice to the Commission and testify concerning the facts of this matter." The PUC denied the OCA's motion, finding that the designation of staff advocates was unnecessary, because there was nothing "in the circumstances of this proceeding to suggest that staff has departed from its role as impartial evaluators of the utility and public interests." The OCA's objection to the PUC's taking administrative notice of Southern's annual reports for 1988 and 1989 was also denied.

On August 13, 1990, the PUC issued an order granting Southern a temporary rate increase in the amount of $750,000. The PUC found that Southern had met its burden of proving by a preponderance of the evidence that it was entitled to temporary rate relief, based on evidence introduced at the hearings which indicated that: (1) Southern had made significant capital investments, totaling approximately $9 million, since its last rate order; and (2) Southern was earning well below its last allowed rate of return of 11.14%. The PUC calculated Southern's current rate of return, using figures from Southern's 1989 annual report, to be 6.84%, and determined that with the requested $750,000 rate increase, the rate of return would be 9.19%. In addition, the commission found "that Southern is currently experiencing a 'financial crisis' as that term was used . . . in *Petition of Public Service Company of New Hampshire*, 97 N.H. 549 (1951) in defining emergency rates pursuant to RSA 378:9."

The PUC rejected the OCA's argument that all of Southern's investment should be excluded from rate base because some of it had been drawn into question. This apparently was a reference to evi-

dence that some of Southern's capital investments had not been properly accounted for. This evidence included the testimony of Robert Phelps, the chief financial officer of Consumers Water Company, Southern's parent corporation, that documentation submitted by the company in its previous rate case to support its request to receive deferred extraordinary expenses in rates was "either fabricated or put together by somebody who had no idea what they were supporting." Yet Phelps went on to testify that Southern's "[r]ates were reduced in [that] proceeding for the error. . . . I am comfortable that no unwarranted expenses or unsupported expenses were never [sic] recovered in rates." In its report, the PUC stated further that

> "we believe that it is in the public interest to grant the requested increase both to ensure that the financial viability of the company (to the extent that it is legitimate) is not ended and to reduce the effect of any potential permanent rate increase to ratepayers by reducing or alleviating the need for any rate recoupment,"

stressing that the standard of analysis employed for temporary rates was "less stringent" than that for permanent rates.

On September 4, 1990, the OCA filed a motion for a rehearing of the PUC's temporary rate order. In denying the OCA's motion, the PUC reiterated its ruling that Southern had met the standard of proof for temporary rates pursuant to RSA 378:27, "a standard less stringent than that to be applied in a request for permanent rates." The OCA subsequently filed an appeal from that decision, which we docketed as No. 90-476 and which we consolidated with the appeal from the PUC's modification order.

II. *Issues on Appeal and Standard of Review*

The OCA presents several arguments for appeal. First, it maintains that the PUC's modification order is invalid because: (1) the PUC had no authority under RSA 365:28 to modify its prior order; (2) the PUC's approval of the agreement reached between PUC staff and the company violated RSA chapter 541-A and denied consumers their right to due process guaranteed by part I, article 15 of the New Hampshire Constitution as well as by the Federal Constitution; and (3) the PUC's waiver of the depreciation study requirement was not supported by the evidence. Second, regarding the temporary rate order, the OCA contends that the order was invalid for the following reasons: (1) the PUC's official notice of Southern's annual reports

violated RSA 541-A:18 and denied consumers due process; (2) the PUC's failure to separate staff into advocate and decision-making roles denied consumers due process; (3) the PUC's decision was arbitrary and capricious because the PUC failed to disclose what standard it applied; (4) the PUC's temporary rate order is not supported by the evidence; and (5) the PUC failed to consider relevant factors, such as the adequacy of service, in making its decision.

The standard of review to be applied in deciding these issues was recently set forth in *Appeal of Richards*, 134 N.H. 148, 158, 590 A.2d 586, 592 (1991):

"A party seeking to set aside a decision of the PUC has the burden of demonstrating that the decision is unlawful, or, by a clear preponderance of the evidence, that it is unjust or unreasonable. Additionally, findings of fact made by the PUC are presumed to be *prima facie* lawful and reasonable. RSA 541:13; *see Appeal of Cheney*, 130 N.H. at 592, 551 A.2d at 166."

We address each of the OCA's arguments in turn.

III. *Analysis*

A. *Modification Order*

The OCA argues that the PUC's authority under RSA 365:28 to modify its orders is limited to correcting mistakes of fact and law that are discovered by one of the parties after the time for appealing to this court has expired. Because Southern did not allege that any error existed in the PUC's order in 73 N.H.P.U.C. 305, the OCA maintains that modification of that order was improper. The OCA also submits that RSA 365:28 required the PUC to reopen the docket in the prior rate case, so that this court would have a complete record from which to review the PUC's action in modifying the order.

RSA 365:28 provides that "[a]t *any* time after the making and entry thereof, the commission may, after notice and hearing, alter, amend, suspend, annul, set aside or otherwise modify any order made by it." (Emphasis added.) In *Meserve v. State*, 119 N.H. 149, 400 A.2d 34 (1979), we stated that RSA 365:28 should be liberally construed. *Id.* at 152, 400 A.2d at 36. By enacting this statute, the legislature "directed the [PUC] to exercise continuous jurisdiction" over the utilities it regulates. *Id.* at 154–55, 400 A.2d at 37. The

PUC's statutory power to reconsider and modify an existing order is limited only in that the modification must satisfy the requirements of due process and be legally correct. *Id.* at 152, 400 A.2d at 36.

■ The OCA does not argue that the hearing and notice given by the PUC prior to issuing the modification order were inadequate so as to violate due process. Accordingly, we hold that the PUC's modification of its order, to the extent that it was legally correct, was proper. In light of this holding, we do not address the OCA's argument that the PUC was required to reopen its prior docket.

Next, the OCA contends that the PUC approved the agreement between its staff and Southern, waiving the requirement of a depreciation study, at a Monday morning meeting without giving consumers proper notice and an opportunity to be heard, in violation of RSA chapter 541-A and the State and federal constitutional rights of due process. We find this argument to be without merit. Although its staff apparently presented the agreement to the PUC on Monday, March 5, 1990, the PUC did not act to modify its prior order by waiving the depreciation study until after notice to the interested parties and a hearing. As noted above, the OCA does not question the adequacy of this notice or hearing.

The OCA's last argument challenging the validity of the PUC's modification order is that the modification was not supported by the evidence introduced at the April 3, 1990 hearing. In order to sustain its burden of proof on appeal, the OCA must demonstrate by a clear preponderance of the evidence that the PUC's modification order is unjust or unreasonable. RSA 541:13.

■ We hold that the OCA has not met this burden. By modifying its prior order, the PUC did not relieve Southern of its obligation to file a depreciation study but merely extended the period of time in which Southern was to do so. Moreover, the PUC's action in no way lessened Southern's burden of proving that it was entitled to the requested temporary rates. The PUC itself recognized this in the modification order when it stated that Southern's "allegation of financial emergency may not withstand evidentiary scrutiny."

## B. *Temporary Rate Orders*

The OCA also contests the validity of the PUC's order granting Southern a temporary rate increase. In its first argument, the OCA asserts that the PUC committed an error of law when it took administrative notice of Southern's annual reports because: (1) it thereby

relieved Southern of its burden of proof, denying consumers due process; (2) notice was improper under RSA 541-A:18; (3) the PUC noticed adjudicative, rather than legislative, facts; (4) chapter 1600 of the PUC's rules specifically prohibits the PUC from using a utility's annual reports to set rates; and (5) under PUC Rule 1603.01, Southern was required to present the information contained in the reports in a different format.

██ New Hampshire law allows the PUC in a rate case to rely on records and reports that a utility is required to file with it. *LUCC v. Public Serv. Co. of N.H.*, 119 N.H. 332, 351, 402 A.2d 626, 638 (1979); *Windham Estates Ass'n v. State*, 117 N.H. 419, 425, 374 A.2d 645, 649 (1977); *New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 101–02, 302 A.2d 814, 821 (1973); *Granite State Alarm Inc. & a. v. New England Tel. & Tel. Co.*, 111 N.H. 235, 238, 279 A.2d 595, 597–98 (1971). Included among these records and reports are the utility's annual reports, *LUCC v. Public Serv. Co. of N.H. supra*, which all water utilities must file with the PUC pursuant to PUC Rule, N.H. ADMIN. R., Puc 609.05. Nothing in chapter 1600 of the PUC's rules, which sets forth rate case filing requirements, prohibits the PUC from taking administrative notice of a utility's annual reports during a rate proceeding.

Accordingly, we hold that the PUC was not prohibited from taking notice of Southern's annual reports. We do not address the OCA's argument that administrative notice was improper under RSA 541-A:18 in view of the fact that no adjudicative proceeding was ever commenced in the present case. *See* RSA 541-A:16, I and II (Supp. 1990); *see also Appeal of Pennichuck Water Works*, 120 N.H. 562, 565–66, 419 A.2d 1080, 1083 (1980) (stating that in setting rates, the PUC is performing essentially a legislative function).

Second, the OCA maintains that the PUC's failure to designate certain staff members as decisional employees denied consumers due process, in that the staff's participation in both investigative and decisional aspects of the temporary rate proceedings deprived the PUC of its impartiality. During the temporary rate proceedings, PUC staff presented evidence and drafted some of the PUC's orders.

██ The combination of investigative, accusative, and adjudicative functions does not necessarily constitute a denial of due process. *See Burhoe v. Whaland*, 116 N.H. 222, 223, 356 A.2d 658, 659 (1976) (citing *Withrow v. Larkin*, 421 U.S. 35, 52 (1975)) (further citations omitted). When a single individual commingles these functions, the

mere appearance of prejudice may be enough to render an adjudication unconstitutional. *Oppenheim v. Com., Dept. of State, Etc.*, 459 A.2d 1308, 1316 (Pa. Commw. Ct. 1983); *see, e.g., Burhoe v. Whaland, supra* at 224, 356 A.2d at 659. Where they are commingled within an administrative agency, however, a party claiming a due process violation must show actual bias. *Oppenheim supra.* Without such a showing, administrative officials who serve in an adjudicatory capacity are assumed "to be of conscience and capable of reaching a just and fair result." *See Appeal of Maddox*, 133 N.H. 180, 182, 575 A.2d 1, 3 (1990).

In the present case, the OCA has not presented any evidence of actual bias on the part of the PUC. We therefore find no merit to its due process claim.

 The OCA's third argument, that the PUC's decision granting Southern a temporary rate increase is arbitrary and capricious because the PUC failed to disclose what standard it applied, is similarly without merit. The standard for establishing temporary rates is contained in RSA 378:27, which the PUC cited at the beginning of its analysis and applied in its report which was incorporated in the temporary rate order. This standard is "less stringent" than the standard for permanent rates, in that temporary rates shall be determined expeditiously, "without such investigation as might be deemed necessary to a determination of permanent rates." *See New Eng. Tel. & Tel. Co. v. State*, 95 N.H. 515, 518, 68 A.2d 114, 116 (1949).

The last two issues raised by the OCA concern whether the PUC's temporary rate order is supported by the evidence. Specifically, the OCA argues that the PUC could not rely on Southern's annual reports because the testimony of Robert Phelps and the audit of the company by Arthur Andersen & Company, introduced during the proceedings as exhibit 10, raise a reasonable ground for questioning the figures in these reports. It also contends that the PUC's calculations of Southern's rate of return are flawed, because the rate base figure used is greater than that listed in one of the company's exhibits, and because the rate of return is unsupported by the company's exhibits. Finally, the OCA asserts that the PUC was required to take into account the adequacy of Southern's service to its customers in deciding whether to grant the requested temporary rates. Again, in order to prevail on appeal, the OCA must demonstrate by a clear preponderance of the evidence that the PUC's decision is unjust or unreasonable. RSA 541:13.

RSA 378:27 requires the PUC to set "reasonable" temporary rates that are

> "sufficient to yield not less than a reasonable return on the cost of the property of the utility used and useful in the public service less accrued depreciation, as shown by the reports of the utility filed with the commission, *unless there appears to be reasonable ground for questioning the figures in such reports."*

(Emphasis added.) In deciding whether to grant Southern the requested temporary rates, the PUC relied, in part, on the company's 1989 annual report. Contrary to what the OCA argues, the figures in this report could not reasonably be questioned, because Mr. Phelps went on to testify that no unwarranted or unsupported expenses were recovered in the rates set in Southern's previous rate case. In addition, the audit report referred to by the OCA relates to the company's financial statements for 1988, rather than 1989. Therefore, the PUC's reliance on Southern's 1989 annual report was proper.

 In a temporary rate case, "we are entitled to assume that what is a reasonable rate was determined from [company reports], in the absence of evidence to the contrary." *Public Service Co. v. State*, 102 N.H. 66, 70, 150 A.2d 810, 813 (1959). Based on the figures contained in the 1989 report, the PUC calculated that Southern was currently earning a rate of return of 6.84% and that, with the requested $750,000 rate increase, it would be earning a rate of return of 9.19%, both of which were below its previously authorized rate of return of 11.14%, which the OCA does not challenge. These calculations were included in the PUC's report incorporated as part of its temporary rate order. The PUC also found that Southern was experiencing financial hardship and had made extensive capital expenditures, which Mr. Phelps testified were to improve its service.

 The OCA has produced no evidence to rebut the presumption of reasonableness to be accorded to these findings. *See* RSA 541:13. Nor has it demonstrated by a clear preponderance of the evidence that the temporary rates set by the PUC, which result in a rate of return less than that previously authorized, are unreasonable. Accordingly, we affirm the PUC's temporary rate order. Having found that the record supports the PUC's decision, we do not address the issue of whether the PUC was required to consider the adequacy of Southern's service.

## IV. *Conclusion*

In conclusion, we hold that the OCA has failed to sustain its burden of proving that the PUC's decisions were unlawful, or by a clear preponderance of the evidence that they were either unjust or unreasonable. Therefore, both the PUC's modification order and its temporary rate order must be affirmed. *See Appeal of Richards*, 134 N.H. at 165, 590 A.2d at 596–97.

*Affirmed.*

All concurred.