Board of Examiners of Psychology and
Mental Health Practice
No. 96-799

APPEAL OF JAMES P. TROTZER, PH.D.

(New Hampshire Board of Examiners of
Psychology and Mental Health Practice)

October 5, 1998

*Shaines & McEachern, P.A.*, of Portsmouth (*Paul McEachern* and *Alec L. McEachern* on the brief, and *Paul McEachern* orally), for the petitioner.

*Philip T. McLaughlin*, attorney general (*Jennifer Brooks Gavilondo*, attorney, on the brief and orally), for the State.

HORTON, J. The petitioner, James P. Trotzer, Ph.D., appeals the decision of the New Hampshire Board of Examiners of Psychology and Mental Health Practice (board) suspending his psychologist certificate for sixty months, with leave to request a stay of the last thirty months of the suspension, as a result of professional misconduct. *See* RSA 330-A:14, III(b), :15-b, VII (1995); RSA 541:6 (1997). The board found that Dr. Trotzer engaged in unprofessional and incompetent conduct in violation of RSA 330-A:14, II (c), (d) (1995).

On appeal, Dr. Trotzer argues that the board violated his rights to due process and freedom of religion. We affirm.

This case arises out of the consolidation of three allegations of professional misconduct. *See* RSA 330-A:15-a, VIII (1995). Dr. Trotzer is a board certified psychologist who was employed as executive director of the Renew Counseling Center in Rye. In the spring of 1993, the board received two complaints from Dr. Trotzer's office manager and a staff counselor. In January 1995, the board received a third complaint from a former patient. Essentially, the three female complainants alleged that Dr. Trotzer engaged in inappropriate and sexually oriented behavior toward them. The board's professional conduct committee (PCC) investigated these complaints pursuant to RSA 330-A:15-a.

On June 1, 1995, the board issued a notice of hearing informing Dr. Trotzer of the allegations of misconduct and notifying him of the commencement of a disciplinary hearing pursuant to RSA 330-A:15-b. The notice named Assistant Attorney General Dahlia A. George, of the consumer protection and antitrust bureau of the department of justice, to act as prosecutor and as a party to the proceeding. *See* RSA 330-A:15-a, II. The notice also named Assistant Attorney General Douglas N. Jones, of the civil bureau of the department of justice, as counsel to the board.

At a prehearing conference held on July 7, 1995, the hearing officer denied without prejudice Dr. Trotzer's motion requesting discovery of his former patient's subsequent clinical records on the grounds that the records were irrelevant to the proceeding. On October 7, 1996, after conducting an evidentiary hearing on four non-consecutive days, the board found that Dr. Trotzer had acted unethically, unprofessionally, and incompetently within the meaning of RSA 330-A:14, II (c), (d), by engaging in a pattern of abuse of authority. The board determined that Dr. Trotzer's substandard and exploitative treatment of his patient, in conjunction with his exploitative behavior toward his office manager and staff counselor, necessitated disciplinary sanctions to prevent safety risks to future patients.

*I. Due Process*

Dr. Trotzer contends that the board violated his right to due process under the State and Federal Constitutions by: (1) failing to construct or maintain adequate walls of division between the assistant attorneys general who served as prosecutor and counsel to the board; (2) allowing a recused member of the board to participate in the prosecution of the case; and (3) denying his prehearing motion

for discovery of the subsequent clinical records of his former patient. We disagree.

■ We address Dr. Trotzer's State constitutional claims first, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing federal law only as an aid to our analysis, *Appeal of Dell*, 140 N.H. 484, 491, 668 A.2d 1024, 1031 (1995). "Because we conclude that federal law is not more favorable to the petitioner, we make no separate federal analysis." *Id.* at 492, 668 A.2d at 1031 (quotation omitted). Dr. Trotzer has a legally protected property interest in his license entitling him to the safeguards of due process. *See, e.g., Appeal of Grimm*, 141 N.H. 719, 720, 692 A.2d 508, 510 (1997) (*Grimm II*); *Petition of Grimm*, 138 N.H. 42, 46, 635 A.2d 456, 459 (1993) (*Grimm I*).

■ We will not set aside a decision of the board absent an error of law, unless the decision is clearly unjust or unreasonable. *See* RSA 541:13 (1997); *Grimm II*, 141 N.H. at 723, 692 A.2d at 511. The board's findings of fact shall be deemed *"prima facie* lawful and reasonable." *Grimm II*, 141 N.H. at 723, 692 A.2d at 511-12 (quotation omitted).

First, Dr. Trotzer contends that his due process rights under Part 1, Article 15 were violated when one member of the attorney general's office participated in the prosecution of the case and another member of the office participated in the adjudication of the case. He argues that "where investigative, prosecutorial, and adjudicative functions are reposed within a single entity, visible walls of division must be constructed to eliminate the threat or appearance of bias." He maintains that the failure of the attorney general's office to establish "walls of division" between the prosecutor, Attorney George, and counsel to the board, Attorney Jones, deprived him of due process. Alternatively, Dr. Trotzer asserts that even if walls of division existed in this case, the record demonstrates that Attorney George and Attorney Jones repeatedly breached such walls.

Dr. Trotzer contends that Attorney George and Attorney Jones commingled investigative, accusative, and adjudicative functions. Specifically, he notes that after Attorney George was appointed to act as prosecutor, the board continually referred him to her for routine inquiries, evidencing a lack of impartiality. Dr. Trotzer also maintains that Attorney Jones' conduct as counsel to the board jeopardized the impartiality of the proceedings, resulting in actual prejudice. For example, he contends that at the prehearing conference, Attorney Jones questioned him in the absence of any request

from the board, denied him the opportunity to ask the board questions, and usurped the board's authority by denying certain motions before the board had an opportunity to rule on them. Finally, Dr. Trotzer argues that Attorney Jones abandoned all pretense of impartiality at the hearing by aiding Attorney George in her cross-examination of him, attempting to point out inconsistencies in his testimony, and questioning his credibility.

■ When a single individual commingles investigative, accusative, and adjudicative functions, the mere appearance of prejudice may be sufficient to violate due process. *See, e.g., Appeal of Office of Consumer Advocate*, 134 N.H. 651, 659-60, 597 A.2d 528, 533 (1991). We have long recognized, however, that the legislature does not offend due process merely by assigning investigative and adjudicative functions to the same administrative body. *See, e.g., id.; Appeal of Beyer*, 122 N.H. 934, 940, 453 A.2d 834, 837-38 (1982). Where investigative, accusative, and adjudicative functions are commingled within a single administrative agency, a party alleging a due process violation must show actual bias in order to prevail. *See, e.g., Consumer Advocate*, 134 N.H. at 660, 597 A.2d at 533; *Scarborough v. Arnold*, 117 N.H. 803, 809-10, 379 A.2d 790, 794 (1977). In *Consumer Advocate*, we emphasized that without a showing of actual bias, administrative adjudicators are presumed "to be of conscience and capable of reaching a just and fair result." *Consumer Advocate*, 134 N.H. at 660, 597 A.2d at 533 (quotation omitted). The party alleging bias has the burden of presenting sufficient evidence to rebut this presumption. *See Dell*, 140 N.H. at 492, 668 A.2d at 1032.

■ We agree with the State that "it is permissible for one assistant attorney general to represent the [b]oard in its quasi-judicial capacity and another assistant attorney general to prosecute" the case before the board, provided no actual bias exists. Here, Dr. Trotzer has failed to show actual bias. Attorney Jones, appointed legal counsel to the board, *see* RSA 330-A:15-a, II, did not participate in the investigation of Dr. Trotzer or in the preparation of allegations against him. Contrary to Dr. Trotzer's assertions, Attorney Jones' comments on the record primarily sought to clarify the proceeding and were intended to assist the board in keeping the proceeding on track and moving along. Moreover, Attorney Jones and Attorney George were employed in different bureaus of the attorney general's office, with different supervisors and wholly distinct functions. After careful review of the record, we conclude that Dr. Trotzer's allegations of "collusion" between the assistant

attorneys general are unfounded and do not support a claim of actual bias.

Second, Dr. Trotzer maintains that the participation of Jane McClung, Ph.D., a recused member of the board, in the hearing, violated the board's rules and resulted in a "commingling of investigative and prosecutorial functions within the same individual" in violation of his due process rights. Under the pretrial order, Dr. McClung was recused from participating in the disciplinary proceeding. Dr. Trotzer argues that the board erred in permitting her to sit at the prosecution table and assist in the proceedings in violation of New Hampshire Code of Administrative Rules Psy 210.03 (Rule 210.03). We find no error.

Dr. Trotzer's claims are based upon a misreading of Rule 210.03. Rule 210.03 provides:

> *Investigators.* The board may appoint a member of its staff, one or more of its members, a committee of qualified persons chaired by a board member, and attorney, or any other qualified person to conduct a formal or informal investigation. When a board member participates in a *formal investigation*, that board member shall not participate in any further *actions of the board* concerning the subject matter of the investigation.

(Emphasis added.) The second sentence in Rule 210.03 is inapplicable here because, under New Hampshire Code of Administrative Rules Psy 210.02(b), the board did not conduct a "formal investigation" of Dr. Trotzer. Rather, the board referred the complaints against the petitioner to the PCC, which appointed an investigator to conduct an "informal investigation." *See* N.H. ADMIN. RULES, Psy 210.01. Accordingly, we find no violation of Rule 210.03.

 Moreover, Dr. McClung's conduct did not commingle investigative, accusative, and adjudicative functions within the same individual. *See Consumer Advocate*, 134 N.H. at 659-60, 597 A.2d at 533. Even assuming Dr. McClung had an investigative and accusative role with respect to the allegations against Dr. Trotzer, there is no evidence to suggest, nor does Dr. Trotzer allege, that she had an adjudicative role. To the contrary, Dr. McClung appropriately refrained from participating in the actions of the board and neither voted nor deliberated in any matter as a board member concerning Dr. Trotzer's disciplinary proceeding. We decline to expand *Consumer Advocate* to hold that absent an adjudicative component, the alleged combination of investigative and accusative functions by Dr.

McClung is sufficient to render Dr. Trotzer's disciplinary proceeding unconstitutional. *See Consumer Advocate*, 134 N.H. at 659-60, 597 A.2d at 533; *Scarborough*, 117 N.H. at 810, 379 A.2d at 794. Accordingly, we find no due process violation under the facts of this case.

Third, Dr. Trotzer contends that the board erred in denying his prehearing motion for discovery of the complainant-patient's posttreatment clinical records. At the prehearing conference, Dr. Trotzer argued that the records would establish that the patient did not seek subsequent therapy to address any "damage" inflicted by him. In response, Attorney George maintained that whether the patient had been adversely affected by Dr. Trotzer's treatment was irrelevant to the issue of whether such treatment had been unprofessional or incompetent.

██ The board denied the request without prejudice on the grounds that Dr. Trotzer failed to establish relevance. The board specifically stated, however, that the issue could be revisited during the course of the evidentiary hearing should Dr. Trotzer wish to reassert it. Dr. Trotzer failed to do so. Moreover, neither his cross-examination of the patient nor his own testimony addressed the substance of the patient's subsequent therapy. Because the petitioner failed to raise this issue again either before or during the evidentiary hearing, it is not preserved for our review. *Cf. State v. Smart*, 136 N.H. 639, 652, 622 A.2d 1197, 1206, *cert. denied*, 510 U.S. 917 (1993).

Dr. Trotzer raises an additional argument on appeal relating to the board's decision. He maintains that the patient's post-treatment clinical records might have refuted the board's determination that his treatment of the patient caused "poor results." In its decision, the board stated that Dr. Trotzer's "substandard and exploitative treatment of [the complainant-patient], *in conjunction with [his] continued contention that he cannot be blamed for the poor results*, and the presence of exploitative behavior in Dr. Trotzer's professional dealings with [his office manager and staff counselor], indicate that disciplinary sanctions are necessary to prevent safety risks to future patients." (Emphasis added.) Dr. Trotzer misconstrues this language as a finding by the board that his treatment of the patient "caused poor results." Contrary to Dr. Trotzer's assertion, the board did not address the issue of what effect his treatment may have had on the patient in its findings of facts and rulings of law. Rather, the board's findings focused on whether Dr. Trotzer had engaged in unprofessional or incompetent behavior during his

treatment of the patient. *See* RSA 330-A:14, II (c), (d). In the above-quoted language, the board merely emphasized Dr. Trotzer's argument that "he cannot be blamed for the poor results." This statement does not constitute a finding that Dr. Trotzer actually inflicted damage on the patient. Accordingly, we hold that Dr. Trotzer's argument is without merit.

## II. Free Exercise of Religion

Dr. Trotzer argues that the board impermissibly infringed on his right to freedom of religion guaranteed by the Federal and State Constitutions by sanctioning him for incorporating Christian concepts into his counseling sessions. Specifically, he contends that Dr. Kinsler, who served as presiding officer at the hearing, assailed him for his use of biblical references in the complainant-patient's therapy, and that the board sanctioned him for his treatment methods and not his conduct. We disagree.

We confine our analysis to the State Constitution, *see Ball*, 124 N.H. at 231, 471 A.2d at 350, because the Federal Constitution affords the defendant no greater protection on this issue, *see Petition of Smith*, 139 N.H. 299, 307, 652 A.2d 154, 160 (1994); *Phillips v. Virginia Bd. of Medicine*, 749 F. Supp. 715, 731 n.34 (E.D. Va. 1990).

The protection for freedom of religion under our State Constitution is found in Part I, Article 5, which provides:

> Every individual has a natural and unalienable right to worship God according to the dictates of his own conscience, and reason; and no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession, sentiments, or persuasion; provided he doth not disturb the public peace or disturb others in their religious worship.

The New Hampshire Constitution "prohibits the State from revoking [Dr. Trotzer's] license for his religious views but does not prohibit revocation for acts that otherwise constitute unprofessional conduct, regardless of their religious character." *Smith*, 139 N.H. at 308, 652 A.2d at 160. "There can be little doubt that it is unconstitutionally impermissible for the state to revoke a medical license on the basis of the holder's religious views, however unorthodox they may be." *Id.* (quotation and brackets omitted.) However, "the holder of a license cannot rely on her religious views to excuse failures to

comply with state medical licensing requirements." *Id.* (quotation omitted).

The board explicitly stated that the proceedings were to determine whether Dr. Trotzer engaged in professional misconduct under the criteria set forth in RSA 330-A:14, II (c), (d). Despite his contentions, the board did not sanction him for his religious beliefs. Instead, the board sanctioned him for his unprofessional and incompetent conduct and found, *inter alia*, that "he did not properly assess the patient's symptoms and functional levels, did not prepare a specific treatment plan, provided counter-productive treatment methods, exploited the dependency of the patient by subrogating her needs to his own needs, and [did] not terminat[e] the clinical relationship with [the patient] or offer[] supplemental or alternative treatment."

■ Moreover, board members are permitted to make reasonable inquiries of the parties and witnesses and speak upon relevant issues. *See* N.H. ADMIN. RULES, Psy 206.12, 207.02(c). Here, the questions asked of Dr. Trotzer at the hearing were reasonable in light of the testimony regarding his integration of theological concepts into his counseling sessions with the complainant-patient. Because the board sanctioned Dr. Trotzer for his incompetent and unprofessional conduct in his treatment of the patient and not for his religious views, we hold that Dr. Trotzer's claim is without merit.

We have considered the additional arguments raised in Dr. Trotzer's brief and supplemental brief and find them to be without merit, warranting no further discussion. *See Vogel v. Vogel,* 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BRODERICK, J., sat but did not participate in the decision; the others concurred.