Original
No. 93-636

# PETITION OF ROLAND SPENCER SMITH, PSY.D.
### (New Hampshire Board of Examiners of Psychology and Mental Health Practice)

December 30, 1994

300

*Sulloway & Hollis*, of Concord (*Margaret H. Nelson* and *Sean M. Dunne* on the brief, and *Ms. Nelson* orally), for the petitioner.

*Jeffrey R. Howard*, attorney general (*Douglas N. Jones*, assistant attorney general, on the brief and orally), for the State, as *amicus curiae*.

*Linda E. Fraas*, of Concord, for the complainant, joined in the State's brief.

HORTON, J. The petitioner, Roland Spencer Smith, Psy.D., petitions for a writ of certiorari seeking to vacate a decision of the New Hampshire Board of Examiners of Psychology and Mental Health Practice (board) permanently revoking his certificate to practice psychology for engaging in unprofessional conduct within the meaning of RSA 330-A:14 (1984). Dr. Smith argues that the board erred by: (1) not having every member of the hearing panel present for testimony of the complainant and Dr. Smith that was used by the panel to determine issues of credibility; (2) failing to specify allegations made against him, thereby violating his right to be apprised of charges against him; (3) considering treatment he provided more than three years prior to the date of the notice of hearing; (4) addressing alleged ethical violations that occurred during a period when the board's administrative rules had lapsed; (5) basing the decision to revoke his certificate, in part, on his religious beliefs; and (6) permanently revoking his certificate. We vacate and remand.

From September 1988 through March 1991, Dr. Smith treated the complainant. In March 1992, the complainant filed a complaint with the board alleging that Dr. Smith misdiagnosed her psychological condition as multiple personality disorder, breached her confidentiality, caused her to become too dependent on him, and otherwise provided unusual and substandard treatment. In response to the complaint, Dr. Smith provided the board with a detailed letter denying many of the complainant's allegations and offering explanations for the remainder.

The board reviewed the complaint and appointed Anne L. Boedecker, Ph.D. to investigate. Because the investigation revealed evidence sufficient to warrant a hearing, the board issued a notice of hearing.

Upon receipt of the notice of hearing, Dr. Smith filed a number of motions with the board including: a motion to strike certain paragraphs of the complaint based on a list of first amendment rights; a motion to strike and dismiss several paragraphs in the complaint for failure to adequately specify grounds; a motion to limit evidence based on laches; and a motion to dismiss and/or exclude allegations to incidents occurring after the board's rules had lapsed. The board denied all of Dr. Smith's motions.

The board conducted hearings on nine days, from September 1992 through January 1993. The board found that Dr. Smith did not breach the patient's confidentiality and his delay in providing patient records did not rise to the level of unprofessional conduct, but concluded that Dr. Smith's treatment of the complainant reflected a pattern of "grossly incompetent and plainly unprofessional" conduct and his continued certification posed a threat to the safety of potential patients within the meaning of RSA 330-A:14, II(d). The board permanently revoked Dr. Smith's certificate.

## I. Due Process

Dr. Smith argues that the failure of every member of the hearing panel to be present for testimony that was used to assess the credibility of the complainant and Dr. Smith violated his right to due process under the State and Federal Constitutions. We agree.

We address Dr. Smith's State constitutional claim first, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing federal law only if it aids our analysis. *State v. Maya,* 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because we find a State constitutional violation under this analysis and vacate, we need not analyze his federal constitutional claim.

Our decision in *Petition of Grimm*, 138 N.H. 42, 635 A.2d 456 (1993), governs this case. In *Grimm*, the petitioner appealed from the board's finding that he engaged in sexual relations with the complainant and thereby acted unprofessionally within the meaning of RSA 330-A:14, II(d). The only direct evidence concerning whether the petitioner and the complainant engaged in sexual relations was the conflicting testimony of the complainant and petitioner. The resolution of the conflicting testimony depended on the hearing panel's assessment of their credibility. We held that the failure of every member of the hearing panel to be present for the testimony of Dr. Grimm and the complainant violated Dr. Grimm's right to due process. Similarly, in the present case, the testimony of the complainant and the petitioner

conflicts, and the resolution of that conflict depends on the hearing panel's assessment of their credibility.

 "A registered psychologist has a legally protected property interest in his psychologist's certificate," and thus is entitled to procedural due process. *Grimm*, 138 N.H. at 46, 635 A.2d at 459. While, in general, "an administrative officer may act on a record of testimony by witnesses whom he has not personally seen or heard," such a procedure is not proper "where the board elects to make factual determinations as a hearing panel and . . . disposition turns on the credibility of the witnesses' testimony." *Id.* at 46-47, 635 A.2d at 459. All members of the hearing panel acting as fact finders must be present for testimony of the complainant and Dr. Smith that concerns the disputed factual basis of a complaint where determination of those disputed facts rests, in some material part, on the fact finder's assessment of their credibility, as shown by their demeanor or conduct at the hearing. *See New England Coalition v. U.S. Nuclear, Etc.*, 582 F.2d 87, 100 (1st Cir. 1978). This is such a case.

The board held hearings on nine days over a period of four months. Although there were six members on the hearing panel, only one member attended all the meetings in their entirety. Members were absent during crucial testimony, including considerable portions of Dr. Smith's direct testimony and both the complainant's and Dr. Smith's cross-examination.

Despite numerous absences, the board made findings on the credibility of both the complainant and petitioner. The board rejected Dr. Smith's proposed finding that the complainant lacked credibility and made an explicit finding that Dr. Smith was not credible:

> Dr. Smith was not a credible witness. He was argumentative, quibbled over minor points, deflected attention from primary treatment issues presented, and made facially questionable statements concerning relevant facts which he later retracted in the face of questioning or requests to produce verifying records. . . .

The State argues that this finding of credibility did not turn upon visual observation of Dr. Smith's demeanor, appearance, or conduct while testifying, but rather upon statements made during the proceeding that lacked probative value on their face. Reviewing the board's explicit findings, we conclude that demeanor and conduct entered into the determination of credibility.

The board's credibility findings led it to accept the complainant's account of her treatment rather than Dr. Smith's account. These factual determinations materially affected the outcome of the hearing. Resolution of these issues against Dr. Smith was used as evidence that

his conduct was unprofessional. In addition, the board rejected testimony offered by Dr. Smith's expert witness because the board disagreed with several of his underlying factual assumptions that were based on Dr. Smith's account of the complainant's treatment.

Dr. Greaves testified on behalf of Dr. Smith stating that while Dr. Smith may have mishandled the case, his conduct was not unethical. The board rejected Dr. Greaves' testimony, in part, because they disagreed with a number of his factual assumptions. Specifically, Dr. Greaves proceeded under the assumption that Dr. Smith had not forced names of an "alter ego" on the complainant, but the board found that he had. In determining this issue the board had for consideration Dr. Smith's testimony that he did not suggest names for any "alters" and the complainant's testimony that it was Dr. Smith who identified these. Such a determination required the panel to evaluate the credibility of both parties. The board also rejected Dr. Greaves' factual assumption that Dr. Smith neither encouraged the complainant's dependency on him nor threatened the complainant to remain in treatment with him. Dr. Smith testified that he repeatedly attempted to have the complainant see an in-patient therapist, that he contacted a therapist concerning the complainant but was told that no more in-patients were being accepted, and that he gave the complainant the name of another therapist experienced with multiple personality disorder. Dr. Smith testified that he did not insist on referring the complainant to another therapist because she indicated that she did not want to start the therapy process all over again. Because Dr. Smith did not document any of these transactions, the board had to determine these issues based on his credibility. The State urges us to apply what is in essence a harmless error standard for this due process violation. The State asks that the court review the record without considering the findings based upon the demeanor, appearance, or conduct of live witnesses to determine whether there was sufficient evidence to support the board's decision to revoke. The State asserts that if there is sufficient evidence without considering the findings based on demeanor, appearance, or conduct, the absences of board members are irrelevant. We decline to adopt this standard. When the board's decision to sanction a psychologist depends on factual determinations, resolution of which depend in some material part on findings of credibility, all board members on the fact-finding panel must be present for all testimony by the parties whose credibility is being assessed.

The board found that Dr. Smith was not credible and that the complainant was. The board resolved a series of questions based on these credibility findings. These findings were used by the board as primary evidence that Dr. Smith engaged in unprofessional conduct,

and as secondary evidence to reject testimony by Dr. Smith's expert. The *Grimm* violations necessitate that we vacate the board's decision.

Because similar issues will likely arise upon remand, we address some of Dr. Smith's remaining arguments in the interest of judicial economy. *Grimm*, 138 N.H. at 48, 635 A.2d at 460.

## II. Failure to Specify Charges

Dr. Smith argues that the board violated his right to due process by failing to specify the charges against him in the board's notice of hearing. We disagree.

■ The test for adequacy of notice is whether the defendant has received "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petition of Bagley*, 128 N.H. 275, 286, 513 A.2d 331, 339 (1986). Adequate notice must give a reasonably complete statement of the information upon which the proposed action is based and set forth the full reasons for that action. *Id*. at 287, 513 A.2d at 340. The concern is that the defendant should not be unfairly surprised. *In re Vermont Health Service Corp.*, 586 A.2d 1145, 1147 (Vt. 1990).

■ Dr. Smith argues that he was prejudiced because the board found that his diagnosis of the complainant was incorrect after the investigator/prosecutor had stipulated that no allegation of incompetence was being made with regard to the diagnosis. The board made this finding only in response to several proposed findings of fact relating to the multiple personality diagnosis, and explicitly stated in its decision and order that the erroneous diagnosis was not a basis for the board's conclusion of professional incompetence. Therefore, even if the proposed findings of fact did not put Dr. Smith on notice, he was not prejudiced by the finding because the board did not consider it in arriving at the conclusion that Dr. Smith was unfit to practice psychology.

■ Similarly, Dr. Smith asserts that he was not put on notice that the board would consider whether his conduct conformed to the accepted stages for the treatment of psychological trauma cases. Dr. Smith could hardly be surprised by the board's findings given that the notice of hearing specifically indicated that the board would assess whether Dr. Smith "conduct[ed] [the complainant's] treatment in a manner which does not follow recognized and acceptable standards of clinical practice."

■ Dr. Smith also argues he did not have adequate notice that the board would find that he used the conflict that had developed between

him and the complainant to justify undue intervention in the complainant's life. The notice of hearing specifically indicated that the board would determine whether Dr. Smith failed to maintain appropriate professional boundaries through such actions as allowing unlimited phone contact, making visits to the complainant's home and staying all night, and allowing the complainant to stay at Dr. Smith's house. Clearly, this put Dr. Smith on notice that the board could make the above finding.

Because the notice of hearing adequately apprised Dr. Smith of the claims against him, the board did not violate his right to procedural due process.

## III. Laches

Dr. Smith argues that laches should bar the board from considering allegations of misconduct arising from treatment that he provided more than three years prior to the board's notice of hearing. We disagree.

■ The doctrine of laches does not apply to this case. The inquiry here is whether Dr. Smith is *currently* unfit or incompetent to practice psychology. RSA 330-A:14, II(d). Current fitness and competence are proved by his conduct in the past. *See State Medical Board v. Stewart*, 89 P. 475, 477 (Wash. 1907). The issue before us differs from that presented in *Appeal of Plantier*, 126 N.H. 500, 494 A.2d 270 (1985), where we applied a "laches-type" doctrine to bar the New Hampshire Board of Registration of Medicine from revoking a physician's license for specific acts of misconduct. Application of the *Plantier* "laches-type" doctrine might be appropriate if the board's inquiry were whether the petitioner engaged in "unprofessional conduct, or dishonest conduct unworthy of, and or affecting the practice of, the profession," RSA 330-A:14, II(c), but it is not appropriate here, where the issue is whether Dr. Smith is currently unfit or incompetent within the meaning of RSA 330-A:14, II(d).

■ Whether the board may use incidents of alleged misconduct occurring more than three years before the notice of hearing is a question of relevancy and weight of the evidence. The board investigated Dr. Smith's conduct over the entire three years of the complainant's course of treatment and ultimately based its finding of unfitness and incompetency on that treatment. Evidence of unprofessional conduct during a course of treatment that ended only one year before the notice of hearing is both relevant and highly probative of current fitness and competence. Because the doctrine of laches does not apply and the evidence which Dr. Smith seeks to exclude is both relevant and highly probative, Dr. Smith's claim must fail.

## IV. Expiration of Rules

▇▇ Dr. Smith argues that the board had no authority to address alleged ethical violations occurring after the expiration of the board's rules. The notice of hearing encompassed the entire course of the complainant's treatment with Dr. Smith, from September 1988 to March 1991, and recites alleged violations of RSA 330-A:14, II(d) in tandem with violations of the Ethical Principles of the American Psychological Association. On May 31, 1990, the board rule requiring certificate holders to adhere to the American Psychological Association's Principles of Ethics lapsed. N.H. ADMIN. RULES, Psy 103.01. The rule was not re-adopted until March 16, 1992, the day before the complainant filed her complaint. RSA 330-A:8, VI (1984) states that the board shall adopt rules relevant to the ethical standards, as promulgated by the American Psychological Association, but RSA 330-A:14 authorizes the board to take disciplinary action for unfitness or incompetency, RSA 330-A:14, II(d), or "[a]ny unprofessional conduct or dishonorable conduct unworthy of, and affecting the practice of, the profession." RSA 330-A:14, II(c). "Promulgation of a rule pursuant to RSA chapter 541-A is not necessary to carry out what a statute authorizes on its face." *Smith v. N.H. Board of Examiners of Psychologists*, 138 N.H. 548, 553, 645 A.2d 651, 654 (1994). Even though expiration of Rule 103.01 may preclude Dr. Smith from being sanctioned for violating that rule after it had expired, expiration of the rule does not preclude sanctions for statutorily prescribed unprofessional or incompetent conduct which also would have violated Rule 103.01 had it been in effect. *Id.*

## V. Free Exercise of Religion

Dr. Smith argues that the board impermissibly infringed on his right to free exercise of religion, as guaranteed by the United States and the New Hampshire Constitutions, by finding that he was incompetent based in part on the following acts: insisting that the complainant was possessed by demons; using a treatment that included praying with the complainant to renounce Satan; and telling the complainant that she had been brought up in a house of demons. We hold that Dr. Smith's claim is without merit.

We first address petitioner's claim under the New Hampshire Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), citing decisions of the Supreme Court of the United States and of courts of other jurisdictions for their helpfulness in analyzing and deciding the State issue. *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because we conclude that federal law is not more favorable to the petitioner, we make no separate federal analysis. *See id.*

▮▮ The protection for freedom of religion under our State Constitution is found in part I, article 5, which states:

> Every individual has a natural and unalienable right to worship God according to the dictates of his own conscience, and reason; and no subject shall be hurt, molested, or restrained, in his person, liberty, or estate, for worshipping God in the manner and season most agreeable to the dictates of his own conscience; or for his religious profession, sentiments, or persuasion; provided he doth not disturb the public peace or disturb others in their religious worship.

The State Constitution prohibits the State from revoking the petitioner's license for his religious views but does not prohibit revocation for acts that otherwise constitute unprofessional conduct, regardless of their religious character. "[T]here can be little doubt that it is unconstitutionally impermissible for the state to revoke a medical license on the basis of the holder's religious views, however unorthodox they may be." *Phillips v. Virginia Bd. of Medicine*, 749 F. Supp. 715, 731 n.34 (E.D. Va. 1990). But, "the holder of a license cannot rely on her religious views to excuse failures to comply with state medical licensing requirements." *Id.* (citing *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990)). The board explicitly stated that the proceedings pertained to Dr. Smith's competency and professionalism under the criteria set forth in RSA chapter 330-A and were not an inquiry into the validity of his religious beliefs. Because the board sanctioned Dr. Smith not for his religious views, but for his conduct in the treatment of the complainant, Dr. Smith's claim fails.

## VI. Permanent Revocation

▮▮▮▮ Dr. Smith asserts that the board exceeded its authority by permanently revoking his certificate. We disagree. RSA 330-A:14, III gives the board discretion to take disciplinary action in a number of ways including permanent revocation of certification. RSA 330-A:14, III(c) (1984). Rule 204.02, promulgated pursuant to RSA 330-A:8, gives the board similar discretion to take disciplinary action but does not include permanent revocation of a psychologist's certificate. N.H. ADMIN. RULES, Psy 204.02. Dr. Smith argues that the adoption of Rule 204.02 limits the board's statutory authority and, therefore, the board exceeded its authority by permanently revoking his certificate. While an administrative agency must follow its own rules and regulations, *Appeal of Nolan*, 134 N.H. 723, 728, 599 A.2d 112, 115 (1991), "[a]dministrative rules may not add to, detract from, or modify the statute which they are intended to implement." *Petition of Strandell,*

132 N.H. 110, 119, 562 A.2d 173, 178 (1989). By attempting to limit its statutory authority through the promulgation of a rule, the board detracted from the statute in contravention of the legislative mandate. Therefore, to the extent the rule detracts from the statute, it is invalid. Partial invalidation of the rule, however, does not prevent the board from permanently revoking the certificate pursuant to its statutory authority granted in RSA 330-A:14, III(c) because "[p]romulgation of a rule pursuant to RSA chapter 541-A is not necessary to carry out what a statute authorizes on its face." *Smith v. N.H. Board of Examiners of Psychologists*, 138 N.H. at 553, 645 A.2d at 654.

## VII. Sufficiency of Evidence

Dr. Smith also argues that the evidence did not warrant permanent revocation of his certificate. Due to the nature of our holding in this case, we decline to address this issue at this time.

*Vacated and remanded.*

BATCHELDER, J., did not sit; the others concurred.